M. O. HACKETT, RESPONDENT, v. R. L. DENNISON, APPELLANT.[*]

Kansas City Court of Appeals. May 20, 1929.

1214

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, Section 2557, p. 664, n. 99; Bills and Notes, 8CJ, Section 340, p. 210, n. 68; Section 742, p. 530, n. 81; Section 1359, p. 1048, n. 21; Contracts, 13CJ, Section 164, p. 325, n. 45; Evidence, 22CJ, Section 1445, p. 1091, n. 39.

*L. L. Watts* for respondent.

*J. H. Newman* for appellant.

BLAND, J.—This is a suit on a promissory note in the sum of $1000, dated Kansas City, Missouri, March 7, 1916, payable to the plaintiff as payee six months after date and bearing eight per cent interest from date. It was signed by the defendant and five other persons as makers. At the conclusion of the testimony the court directed a verdict for the plaintiff. Defendant has appealed.

The answer pleads that there was no consideration for the note; that subsequent to its signing by the defendant there was an oral contract entered into between plaintiff and defendant discharging defendant from all liability upon the note. The reply was a general denial.

The evidence shows that plaintiff and the signers of the note were interested in the Iroquois Mining Company which was engaged in mining operations at Joplin. The company maintained an office in Kansas City which was in charge of one Stump as manager and Miss Gordon as secretary.

Plaintiff testified that prior to the execution of the note all of the parties thereto, including the defendant, were present at a meeting in Kansas City; that this meeting was for the purpose of raising money as the company was out of funds and could not proceed further; that plaintiff at this meeting decided to advance $1000; that he did not advance the first $200 of the amount until a day or two after the meeting or until the makers signed the note. Defendant was president and manager of the company in charge of operations at Joplin. Plaintiff gave defendant a check for $200 at the time the note was signed and gave him a check for $800 two or three days thereafter. In connection with defendant's cross-examination the

checks given by plaintiff to defendant were introduced in evidence. The check for $200 was dated at Kansas City, on March 7, 1916, and the one for $800, at Kansas City on March 10, 1916. The $200 check was endorsed in blank by the defendant and the $800 check was endorsed "R. L. Dennison, Deposit to credit of Iroquois Mining Company, by R. L. Dennison, Pres. & Treas."

Defendant testified that he was in Joplin and that plaintiff and Stump brought the note in question to that place; that at this time all the signatures of the makers were on the note except that of defendant; that he signed the note when the $200 check was given; that plaintiff did not like the way defendant was running the property and wanted to get "rid" of him and one Tom Lively, who was superintendent for the company; that after defendant signed the note Lively resigned as superintendent and defendant resigned as manager; that after the note was signed plaintiff required these resignations before he "would put in the money ($800) and accept the note;" that the $200 was paid defendant at another meeting at Joplin prior to the one when he signed the note; that he endorsed the $200 check over to Miss Gordon, who used it; that this $200 that plaintiff paid was "advanced to the company before the note, and then (plaintiff) agreed to make $1000 note (to advance), $800, and made (took) a note for $1000 covering the previous;" that defendant had charge of the operation of the property but not the finances; that at the meeting when the note was signed there was an arrangement that Stump was to be put in as manager; that on the same night after the note was signed Stump was put in as manager; that after Stump was put in as manager the witness turned the $800 check over to him and it was disbursed by Stump for the company and that the witness had nothing further to do with spending the money.

Defendant further testified that the morning after the note was signed he went out to the mine and found Stump in charge "and doing some work to which I objected;" that Stump told him he was in charge under plaintiff and to talk to plaintiff; that defendant talked with plaintiff who "said that it was absolutely real, that Stump was going to run the property in his (plaintiff's) interest and that I was out of it, and I said 'I will not be held responsible,' 'Oh, no' he says, 'we are not holding you responsible;'" that Stump was in charge of the property after this time. It seems to be agreed by the parties that the testimony of defendant that plaintiff "told him we are not holding you responsible" meant defendant was not to be held responsible on the note.

Defendant made the following offer of proof:

"Now if the court please defendant offers to show that after the defendant Dennison had signed this note there was an oral agreement between A. L. Stump and this plaintiff and the defendant, that if

the plaintiff and Stump were permitted to manage the affairs of this mining corporation undisturbed and uninterrupted by this defendant, then it was agreed that said plaintiff would cancel all obligations of this defendant on this note, and that in pursuance of this agreement defendant turned the management of the corporation over to Stump and Hackett and in no way interfered with or interrupted their enjoyment of the same."

Plaintiff objected to this offer on the ground that it was not competent under section 908, Revised Statutes 1919, which provides, among other things, that "a renunciation (of a negotiable instrument) must be in writing unless the instrument is delivered up to the person primarily liable thereon." The objection was sustained. Plaintiff and defendant were the only witnesses at the trial.

It is insisted by defendant that the court erred in directing a verdict in favor of plaintiff for the reason that there was evidence tending to show that there was no consideration given to defendant for his signing the note; that the $200 check was given before he signed it; that there was no evidence of an agreement that defendant should sign such a note when that check was given; that after defendant signed the note plaintiff refused to and never did pay the other $800 to the defendant as contemplated, but forced him out of the management of the company and directed him to endorse the checks over to Miss Gordon and Stump.

There is no evidence that the $200 check was turned over to Miss Gordon at the direction of plaintiff and none that the $800 check was turned over to Stump at his direction. There is no contradiction in the testimony that the entire $1000 was advanced for the use of the company and when defendant was forced out he naturally turned the money over to his successor as manager of the business.

Defendant admitted his endorsement upon the $800 check showing that he deposited it to the credit of the mining company. The endorsement of Stump does not appear upon the check, but assuming that defendant turned the check over to Stump as he testified, there is no evidence or inference from the evidence that the money was to be advanced to defendant for his own purposes, or that thereafter defendant, having been forced out of the company, was directed by plaintiff to turn it over to Stump. If it was the understanding that the money was being furnished to the company it would make no difference whether plaintiff directed defendant to turn it over to Stump. Defendant continued to be interested in the company as a stockholder but it is not even necessary that the promisor should be benefited by the consideration. A benefit to a third person is sufficient. [13 C. J., p. 325; 8 C. J., pp. 213, 214.] It has been held that there is a consideration although it does not pass to the maker personally but to the corporation of which he is manager or president. [8 C. J., p. 214; Dry Goods Co. v. Linville, 93 Kans. 634.]

It is next insisted that the court erred in directing a verdict in favor of the plaintiff for the reason that after the note was signed plaintiff refused to deliver over the $800 until Stump was put in as manager, and it was agreed that if defendant would step out and deliver over the management of the mine to Stump and in no way interfere therewith that defendant would be released from all liability upon the note; that the evidence is undisputed that the defendant endorsed the checks and delivered the money over to Stump and Miss Gordon, resigned as manager and in no way interfered or molested Stump in the operation of the mine or the expenditure of money; that all of these things show an accord and satisfaction which is not governed by the provisions of section 908, Revised Statutes 1919.

Neither defendant's offer of proof or his testimony tended to show an accord and satisfaction. Therefore, whether or not section 908 governs in such cases is not before us. The court properly sustained the objection to the offer of proof and it makes no difference whether or not the reason assigned therefor by plaintiff or his objection thereto was good.

Defendant's testimony shows that he resigned as manager before plaintiff accepted the note. Of course, until plaintiff accepted the note there was no agreement whatever between them as the note was not executed. Consequently there had not come into being a binding obligation. [8 C. J. 210; 3 R. C. L. 859; Hepp v. Henfner, 61 Wisc. 148; Nicholson v. Combs, 90 Ind. 515; Lomax v. First National Bank, 39 S. W. 655.]

Defendant in his offer of proof offered to show merely that after defendant signed the note the oral agreement was entered into. The mere signing of the note by defendant did not make it a valid obligation and therefore, it was not a note until it was executed by the acceptance of the plaintiff. The offer of proof did not go far enough, but in fact had it gone any further it would have been inconsistent with defendant's testimony. He positively testified "Lively resigned as the superintendent, and I resigned as manager before Hackett would put in the money and *accept* the note. Q. Now, was that after you had signed the note or before? A. That was after the note was signed." (Italics ours.) This evidence shows that plaintiff refused to accept the note and advance the money thereon until defendant and Lively resigned and in order to get plaintiff to go through with the deal by accepting the note and advancing the money these resignations were tendered. Of course, the evidence that defendant offered to show would be no defense to this action. The oral agreement such as stated in defendant's offer of proof was made either contemporaneously with the execution of the note, or during the negotiations concerning the execution

of the note, that is, between the time it was signed and the time it was accepted, and was incompetent. [People's Bank v. Yager, 288 S. W. 954; First Nat'l Bank & Trust Co. v. Limpp, 288 S. W. 957.]

If defendant's testimony that the next day after the meeting and the signing of the note plaintiff told him "we are not holding you responsible" means that defendant agreed to release plaintiff as maker on the note, there was no consideration for the agreement. While defendant testified that there had been no demand on him for the payment of the note, the bringing of this suit was sufficient demand. [8 C. J., pp. 527-531.]

It is insisted that the court erred in giving the peremptory instruction to the jury in the following form:

"The court instructs the jury that under the law and the evidence your verdict must be in favor of the plaintiff and against defendant in the sum of $1000 with interest thereon at the rate of eight per cent per annum from March 7, 1916, to date, to-wit, December 19, 1927."

In this connection it is claimed that the court should have left to the jury the matter of determining the amount of the principal as well as the interest under provisions of section 1423, Revised Statutes 1919, which reads as follows:

"When a verdict shall be found for the plaintiff in an action for the recovery of money only, the jury shall also assess the amount of the recovery; so, also if they find for the defendant in case of off-sets or other demand for money."

There is no merit in this contention. Under the latest decisions of the Supreme Court where there is no controversy as to the amount of the recovery the court may instruct the jury that if recovery is had at all, the amount of the recovery so far as principal is concerned, but not as to interest. [Beckley v. Hickerson, 315 Mo. 400; Beckley v. Hickerson, 257 S. W. 822, 824; Meffert v. Lawson, 315 Mo. 1091, 1096; Mercantile Trust Co. v. Dulle, 282 S. W. 414.]

The writer hereof on two occasions has stated it was his opinion that under the provisions of section 1423, Revised Statutes 1919, the court has no more right to determine the amount of the principal and instruct the jury to bring in a verdict in that amount, than it has to calculate the interest for the jury (see Ward v. Bowman, 228 S. W. 833; Beckley v. Hickerson, 257 S. W. 822, 823), and still can see no difference in principle between the matter of instructing the jury as to the amount of the principal and the amount of interest. However, what was said by the writer in Beckley v. Hickerson, was not approved by this court and the case was certified to the Supreme Court and that court disagreed with the writer. [See Beckley v. Hickerson, 315 Mo. 400.] As we understand the latest decisions of the Supreme Court the rule now in force in this State is that in

a suit for the recovery of money the court, where there is no dispute as to the amount of the recovery in case there is one, has a right to determine the amount of the principal and instruct the jury that in case there is a recovery to bring in a verdict for that amount plus the interest, but has no right to calculate the interest for the jury. It is apparent that the court in the case at bar pursued the proper course under the latest decisions of the Supreme Court.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.