## Blue Grass Taxi Garage Co., Inc. v. Shepherd.

March 28, 1947.

K. S. Alcorn, Judge.

Clay & Clay for appellant.

Montgomery & Montgomery for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee, Adrian B. Shepherd, was an enlisted soldier in World War No. 2. His parents with whom he lived before his enlistment resided and still do in Adair County, Kentucky. He received his discharge from the army in October, 1945, at Camp Atterbury, Indiana, and was paid at that time the balance of compensation due him from the government. From there he went to Cincinnati, Ohio, where he purchased from a used car dealer a 1940 Plymouth automobile and received the necessary papers from the dealer, as well as executing all necessary papers required in such transaction. His discharge from the army contained among other things a description of his physical make-up, including height, weight, color of hair, eyes, a description of a scar on his face, and other descriptive indicia not necessary to be mentioned. Some of the papers so issued to him by the government, or the one from whom he purchased the car, were required to be and were signed by him.

Following the purchase of the automobile he deposited the foregoing documents, including his discharge,

in a pocket on the door of the automobile, and then drove his car to the home of his parents in Adair County.

At the time of the transaction here involved (December 30, 1945) he and his younger brother, William Keith Shepherd, were living with his parents in their home in Adair County. On the night of that day appellee, his brother, William Keith Shepherd, and his uncle, Robert Shepherd, were returning in the car he had recently bought, from a trip to the home of his parents, but in order to reach that destination it was necessary for them to travel some distance over a dirt road after leaving the macadamized highway, and when they had traversed about half the distance of that road after leaving the highway they discovered the automobile of Dr. Jefferson who resided in Columbia, Kentucky, which was stalled in the mud of the dirt road completely obstructing passage. The doctor had procured a tractor to pull his car out of its mired condition but had not succeeded when the trio composed of the Shepherds arrived at the spot. Appellee, of course, stopped his automobile near the stalled car and he and his uncle got out of it and went to the scene to render whatever assistance they could. In doing so appellee left his brother in the car apparently asleep on the back seat. Shortly prior to that occasion his brother had been indicted, in connection with another, for stealing an automobile and was out on bond of $1,500 executed by appellee as his bail, but he testified that his brother was not guilty of the charge preferred in the indictment against him; that he happened to be riding in an automobile with the thief who had stolen it from another, and his brother had no knowledge of its being stolen.

Appellee and his uncle when leaving his automobile went immediately to the stalled one, a very short distance, and in the meantime the tractor had been attached to the stalled car of the doctor and its power applied producing considerable noise. While that was being done appellee's brother drove his (appellee's) car away and appeared in Danville, Kentucky, with the car some two hours thereafter at about 12:30 a. m. on December 31, 1945. Shortly after arriving there he contacted Ernest Kirkland, the vice-president of appellant, who was on duty that night, and proposed to sell him the automobile which he had so purloined. The brother

represented to Kirkland that he was Adrian B. Shepherd and produced the documents that he had taken from their place of deposit in the door pocket of the car, all of which had remained there from the time they were first deposited therein by the appellee.

The sale certificate issued by the Cincinnati dealer stated that the price paid therefor by appellee was $696, but appellee testified that the actual amount paid was $901, the price stated in the certificate being the then ceiling price for that type of car. After purchasing the automobile appellee bought and had installed a new motor at the cost of $200 and had procured four new wheels at a cost of $74, thus making the total cost to him $1,175, but his brother in negotiating the sale of the car to Kirkland, the agent of appellant, asked and obtained only $500 for the car in its then repaired condition. Kirkland stated that the thieving brother claimed, while negotiating for the sale and as a reason for making it, that it had become out of repair and he wanted to continue his trip to his home, which he stated was in Cincinnati, and where he had a wife to whom he was anxious to return.

Immediately after appellee's brother started away with the car from the scene of the mired car, appellee notified surrounding peace officers and continued thereafter his efforts to locate his brother, as well as his car, but he was unsuccessful until the expiration of some ten days, when he was pursuing a clue that had called him to Danville where he found his car parked in front of the Taxi Garage of appellant. He then asserted ownership of it and demanded its return to him, but which was refused by appellant, and on January 17, 1946, he filed this ordinary action of claim and delivery against appellant in the Boyle circuit court to recover possession of his automobile.

Appellant's defense to that action was and is an alleged "Estoppel by Negligence" of appellee in getting out of his car at the scene of the stalled one of Dr. Jefferson and leaving his brother therein with his identification papers deposited in the automobile. A jury was waived and by agreement the case was tried by the judge of the court who rendered judgment for plaintiff, to reverse which appellant prosecutes this appeal.

The learned judge who tried the case wrote and filed with the record his opinion in which he succinctly states the facts, as well as the law, at least as clearly if not more so than we could, and for that reason we take this excerpt from it:

"The buyer of stolen chattels acquires no title however innocent he may be. Urban v. Lansing's Adm'r, 239 Ky. 218, 39 S. W. 2d 219; Bozeman etc. Association v. Fairchild, 253 Ky. 74, 68 S. W. 2d 756, 92 A. L. R. 419. But by culpable negligence, the proximate cause of the buyer making the purchase, the real owner may be estopped to question the title. 21 C. J. p. 1169. As stated in Jott v. Jott, 171 Ky. 548, 552, 188 S. W. 669, 672, 'negligence, to amount to an estoppel must be in the transaction itself and the proximate cause of leading the party, in whose behalf the right to rely upon it arises, into mistakes.' The principle is also expressed familiarly that if one of two innocent persons must suffer, the loss should be borne by him whose negligence brought it about. Begley v. Combs, 106 S. W. 246, 32 Ky. Law Rep. 538; Citizens' Union, etc. Bank v. Terrell, 244 Ky. 16, 50 S. W. 2d 60.

"I do not think that the evidence supports the claim that plaintiff is estopped to question defendant's title, because of negligence. On the contrary, the evidence is, that confronted by the stalled truck in the road ahead, he got out to investigate, that he walked only a short distance from his own car, that at the time he left the car, his brother, who stole the car, apparently was asleep; that his, plaintiff's, bill of sale and army discharge were in the glove compartment; that so far as he was aware, his brother did not know they were there; that within just three or four minutes from the time he got out of the car, and before he had had time to assist as to the stalled truck, to get it out of the road, his car was driven away by his brother. Though he knew his brother was a law violator, charged with having stolen a car, I do not see in this evidence any basis for the position that plaintiff ought reasonably to have anticipated or realized that while he was thus away from the car, his brother might steal it. In that connection, I call attention to this statement from 21 C. J. p. 1172, with regard to estoppel arising by reason of negligence:

" 'And the rule does not apply in cases where the wrong was accomplished through the instrumentality of a criminal act, it being held that in such cases the crime, and not the negligent act, is the proximate cause of the injury.'

"Illustrative of this is Schumann v. Bank of California, 114 Or. 336, 233 P. 860, 37 A. L. R. 1531, where the court declared that before one may be estopped because of want of care in preventing an unauthorized transfer of his property, his negligence must have been such as to amount to a breach of duty to the person claiming the estoppel, and that no one owes the duty to another to anticipate that crime will be committed."

That there is such a principle in the law as Estoppel by Negligence is shown by the text in 21 C. J. 1169, sec. 175; 31 C. J. S., Estoppel, sec. 102, p. 323, and 19 A. J. 694, sec. 66. The texts in each of such publications describe the limitation of the rule, some of which are, that the negligence necessary to create an estoppel must be *culpable* and not "More general carelessness, however, or neglect of what would be prudent in respect of the interests of the party claimed to be estopped is not sufficient. In general, the neglect must be in the transaction itself, and be the proximate cause of leading the party in whose behalf an estoppel is urged into the mistake, and it must amount to a breach of duty owing to him or to the public." 19 A. J. p. 694, sec. 66. In note 2 to that text many cases from different courts are cited, including that of People's Trust Co. v. Smith, 215 N. Y. 488, 109 N. E. 561, 562, L. R. A. 1916B, 840, Ann. Cas. 1917A, 560. The opinion in that case was written by Judge Cardozo. The facts were, that one Geo. F. Stainton had a nephew by the same name. He had in his possession a $3,000 bond to secure an indebtedness, which he left with his nephew, an attorney, with other papers all deposited in a safe in his nephew's office. The nephew later purloined the bond and disposed of it to a supposedly innocent purchaser. In holding that the estoppel did not apply to Geo. F. Stainton, the depositor of the bond, because of his negligence by depositing it in a safe located in the office of his nephew, who bore the same name as he, the learned judge said:

"To make out an estoppel on that ground, (negli-

gence) it is not enough to show that the owner was careless. He must have been careless in respect of some duty owing to the plaintiff or the public. (Citing cases). * * *

* * * There was nothing about them to indicate that any transfer was contemplated. They were the expression of a static condition of a 'right at rest,' rather than a 'right in motion.' Holland, Elements of Jurisprudence, p. 132. It was possible, of course, that the custodian might personate the mortgagee and forge an assignment. The same thing would have been possible, though perhaps more difficult, if the names had been different. It is not to be overlooked that the nephew's act, though he used his own name was none the less a forgery.'' (Our parenthesis.)

Further along in the opinion it is also said: ''It is true, of course, in a broad sense, that by intrusting his bond and mortgage to the nephew he made possible the fraud. That would be equally true if he had intrusted the nephew with the custody of diamonds. Indeed, the wrongful sale of diamonds, passing, as they do, from hand to hand, is probably the easier crime and one more readily to be foreseen. But the mere possession of a chattel with the permission of the owner does not enable the possessor to transfer a title by estoppel.''

Other parts of the opinion further illustrate the fallacy of appellant's defense in this case.

Moreover, the text of the publications referred to supra and the supporting authorities cited in the notes thereto, declare that in order to create an estoppel *by negligence* of the one estopped, the one claiming the benefit of the estoppel must himself be free from negligence, since he must exercise at least ordinary care to guard against entering into transactions with another through and by which he was defrauded. We conclude from the testimony that appellant in this case failed to exercise such care for its protection in the purchase of appellee's automobile from his brother.

The hour (past midnight) when the thief proposed to sell to appellant his brother's car was, to begin with, not within the business hours of the day in which ordinarily such transactions are made. The excuse of the

guilty brother that he was willing to take $500 for a car which it appeared from the certificate of sale was *far* below the purchase price of the car some three months before, and, lastly but not least, the documentary evidence produced to appellant in order to identify himself as the owner of his brother's car, clearly showed that the description in the army discharge of appellee did not fit that of his brother, since the latter was only five feet and eight inches tall, whilst his brother was six feet and one inch tall. The appellee has brown hair and blue eyes, which also appeared in his discharge, whilst his brother, the thief, has jet black hair and black eyes. Moreover, the criminal brother had no scar on his face as appellee was shown to have. All of this was amply sufficient to excite suspicion by Kirkland, and to call for more substantial and convincing evidence of the identity of the proposed seller of the automobile to him, and because of appellant's negligence alone the estoppel does not arise so as to constitute a defense to this action.

Lastly, the texts referred to declare as a qualifying rule to a situation where an estoppel by negligence might otherwise prevail that it will not arise—as so stated by the learned judge in that part of his opinion hereinbefore inserted—"where the wrong was accomplished through the instrumentality of a criminal act, it being held that in such cases the crime, and not the negligent act, is the proximate cause of the injury." The judgment appealed from is so eminently proper and so strongly demanded by both equity and justice without considering the cited authorities, that we find it almost as difficult to advance reasons for sustaining it as it is to explain why "two and two are four."

The case, as we have said, was tried by the court, a jury being waived. No request for separation of fact and law was made, nor was it done. Appellant made no motion for a new trial, and perhaps the judgment should be affirmed because of such failures of correct practice; but, since we thought it necessary to decide the case upon its merits, we will not enter into a discussion of appellant's omission of such necessary practice steps in preparing the case for appeal.

Wherefore, the judgment is affirmed.