**Helen Walsh DOUGLASS, Executrix of the Estate of Jean Hall Douglass, Deceased, and Helen Walsh Douglass, an Individual, Plaintiff (Appellant-Respondent),**

**v.**

**Myrtle H. DOUGLASS and Cyrus Douglass, Defendants (Appellants-Respondents).**

No. 49196.

Supreme Court of Missouri,

Division No. 1.

Dec. 11, 1962.

Rehearing Denied Jan. 14, 1963.

Richard R. Russell, Joseph J. Howard, Kirkwood, for defendants-appellants-respondents.

F. G. Armstrong, St. Louis, for plaintiff-appellant-respondent.

HOLMAN, Commissioner.

Jean Hall Douglass died on March 26, 1959, as the result of cancer from which he had suffered for several years. On February 19, 1959, said decedent and his wife, Helen, had executed a deed of gift whereby they conveyed a house and lot they owned as tenants by the entireties to his parents, defendants herein. The deed was promptly recorded but was not delivered to the grantees until shortly after Jean's death. This suit was filed by Helen, as an individual and as executrix of Jean's estate, in an effort to obtain a decree canceling said deed (or for certain alternative relief) on the ground that it was executed by her as the result of a unilateral mistake of fact on her part. Defendants filed an answer and a counterclaim in which they sought a judgment in the sum of $10,500 (and interest), the alleged balance due on a promissory note payable to them and signed by Jean and Helen. A trial resulted in a judgment for defendants on plaintiff's claim, and also a judgment for defendants on their counterclaim in the sum of $10,500 and interest from December 9, 1959, the date defendants had filed a demand on said note against the estate of Jean. The court found that defendants were not entitled to recover interest on said note for the period from its date until the date of filing the aforementioned demand because they had been guilty of laches in failing to demand payment of said interest. All parties have appealed, but the sole contention of defendants upon their appeal is the alleged error of the court in failing to enter judgment for the entire amount of interest that had accrued on the note.

Jean and Helen were married in 1942 when each was 38 years of age. He was an automobile salesman and she was employed as a buyer for a large department store in St. Louis. She continued to work until they adopted a son in 1946. At about that time Jean obtained a Studebaker franchise and commenced business for himself under the name of J. H. Douglass, Inc. He continued to operate this business until about 1950 when he received an injury which caused him to "retire," and he stayed at home for the following three years. In 1953 he went back to work as an automobile salesman for one Percy Tucker with whom he had been associated in prior years. Apparently Tucker had owned half of the stock in the Douglass corporation, and said corporation had owned two business buildings and, upon the liquidation of the corporation, Jean and Helen owned one half of that property and Tucker the remaining one half. In January 1954 Jean and Helen purchased the half interest of Tucker in the commercial buildings and in order to pay for same they sold the residence they then occupied and also borrowed $11,500 from defendants and gave a note therefor. Four payments of $250 each were made on the principal of that note during the period from February to June 1954, and no other payments were thereafter made.

While Jean was operating the Studebaker agency his father worked for him. When the agency closed defendants were more than 70 years of age and thereafter Jean made contributions to his parents' living expenses. For example, during 1954, Jean gave his father $75 a month with which to pay apartment rent. In May 1947, Jean obtained a $10,000 life insurance policy in which he made his parents the beneficiaries and delivered it to his mother who retained possession of it until after her son's death.

In February 1955 Jean and Helen purchased the Antler Drive property, taking title as tenants by the entireties. Two months later the defendants moved into that residence and have occupied it as a home since that time. Later in that year it was discovered that Jean was suffering from cancer and an operation was performed after which he spent some six months in convalescence before returning to his work as an automobile salesman. In October 1958 it developed that Jean was suffering from

a recurrence of cancer and another operation was performed. After being discharged from the hospital he returned to his home and remained there until his death on March 26, 1959.

In September 1958 Jean and Helen purchased a $42,000 residence on Berkshire in Richmond Heights. Helen and her mother (who resided with them) advanced $20,000 for the down payment on that property and the balance was borrowed from a bank.

Jean's will of March 1956 purported to devise a life estate in the Antler Drive property to defendants. On February 10, 1959, Jean executed a new will in which he devised all of his estate to Helen. On February 19, 1959, Jean and Helen executed three deeds. One of them conveyed the Antler Drive property to defendants. Helen testified that she suggested that the property be conveyed to defendants because "I wanted them to have the pride of ownership." Another deed conveyed the commercial property to a third party who reconveyed it to them, "one half each as tenants in common." The other deed conveyed their residence on Berkshire to a third party who reconveyed it to Helen Walsh Douglass.

Helen testified that after Jean's operation in October 1958, when they all knew that he was going to die, she had a conversation with the defendants in which she said there was "enough for all of us and the note was protected; * * * that the policy backed the note; * * * they didn't say anything about the insurance policy but seemed to know that the insurance policy covered it [the note]." However, on cross-examination plaintiff admitted that in her deposition she had stated that she had never discussed the note with the defendants prior to Jean's death and she didn't remember any conversation about any insurance policy at the time she talked with the defendants after Jean's operation. Helen further testified that at the time she delivered the deed to defendants, about April 1, 1959, Mr. Douglass said, " 'I guess you want that note,' and

I said, 'Well, that would be the usual procedure unless you want to tear it up.' * * * He said it was in the safe deposit box and he would get it," but he did not do so.

On cross-examination plaintiff stated that she did not remember Mr. Douglass saying that the note should be entered as a claim against the estate for estate tax purposes, although she remembered that something was said about "tax purposes." She also testified that Jean had life insurance policies in the amount of $40,000 in which she was named as the beneficiary.

Cyrus Douglass testified that he had a conversation with plaintiff shortly after his son's death in regard to her paying the note and the manner in which she was to pay it, and at that time suggested that because of inheritance taxes it would be better to have the claim allowed against the estate rather than for her to pay it as an individual; that this was the only conversation he had with her relative to the note.

Myrtle Douglass testified that she had never at any time discussed any business with plaintiff; that on one occasion, in January 1959, when she visited Jean, he stated, in the presence of plaintiff, that "we were to live in the Antler property our lifetime, and as long as he was changing his will he was deeding us the property."

As a basis for its judgment in favor of defendants the trial court made the following findings: "There was no agreement by Cyrus and Myrtle H. Douglass to accept payment of said note in anything other than cash and said defendants did not make a renunciation of the note. There was no fraud on the part of said defendants and they did or said nothing which would deceive or mislead Jean Hall Douglass or Helen W. Douglass. Neither defendant knew of any misunderstanding by, or mistake on the part of, either Jean Hall Douglass or Helen W. Douglass. The real estate mentioned in the amended petition, at 8515 Antler Drive, St. Louis County, was a gift by Jean Hall Douglass and Helen W.

Douglass to said defendants and there was no connection between the gift of this property to defendants and the note. The gift of this property to defendants was a part of a property settlement between Jean Hall Douglass and Helen W. Douglass on February 19, 1959. The General American Life Insurance Policy No. 1104465 for Ten Thousand Dollars ($10,000) on the life of Jean Hall Douglass in which defendants were named as the beneficiaries thereof, was a gift to defendants when the insurance policy was delivered by Jean Hall Douglass to Myrtle Douglass in May of 1947." We agree with the quoted findings of fact and adopt them as our findings to the extent applicable herein.

Upon this appeal Helen does not claim that the evidence would support a finding that defendants agreed to apply the proceeds of the insurance policy toward the payment of the note. It is her position that in some manner (which she is unable to explain) the idea developed in her mind that if she and Jean deeded the Antler Drive property to defendants the defendants would apply the proceeds to be obtained from the life insurance policy toward the payment of the balance due on the note, and if she had not possessed that mistaken idea she would not have signed the deed. Because of that unilateral mistake of fact she contends that she is entitled to a decree rescinding or canceling that deed. She offers to agree that defendants may have a life estate in the property or, as alternative relief, that defendants may (in effect) elect to accept a decree whereby they would retain the property and apply the insurance proceeds on the note in accordance with her idea as to the arrangement.

As authority for her contention plaintiff cites 12 C.J.S. Cancellation of Instruments § 27 b (2), p. 978, wherein it is said that "Where a contract in writing is executed by only one of the parties, under a mistake as to a fact which is of the essence of the contract, the mistake constitutes a ground for a court of equity to rescind and cancel the apparent contract as written, and to place the parties in statu quo, * * *. Sometimes, however, before granting this relief the court affords the party not mistaken the option to accept an alteration in the agreement—or, more accurately, a contract in the terms understood by the other party—instead of an annulment of the writing."

■ We have examined the cases cited in the notes to the quoted text and find none where relief has been granted upon the basis of a unilateral mistake so vague and indefinite in its origin as the one plaintiff says caused her to sign the deed in question. It should be noted that this mistake was not in the provisions of the instrument being executed and did not directly concern the property conveyed. The mistake related to other transactions which plaintiff, in her mental processes, sought to connect with the conveyance. In most of the cases where relief has been granted it has been shown that the other party, either intentionally or innocently, participated in causing the mistake. That situation did not exist here. It is stated in Vol. 3, Corbin on Contracts, § 608, p. 677, that it "must be borne in mind, however, that the circumstances accompanying the mistake must always be considered, just as they were considered by the former courts of Chancery. It has never been asserted, and it is not being asserted here, that a party ever makes out a sufficient case for relief, either affirmative or defensive, by merely proving that he was caused to execute a deed or to make a promise by the fact that he had a mistaken thought * * *." We think that is the situation here. Plaintiff simply had the "thought" that if the property was given to defendants they "should" and perhaps "would" reciprocate by applying the insurance proceeds upon the note. That is not sufficient to warrant the relief sought.

■ There is another reason why plaintiff is not entitled to prevail. A limitation usually placed upon the rule which affords

relief from a unilateral mistake is "that the mistake should not result solely from the want of such care and diligence as are exercised by persons of reasonable prudence under the same circumstances." 12 C.J.S. Cancellation of Instruments, supra, § 27 b, (3), p. 980. We think plaintiff was careless and failed to exercise reasonable prudence in this matter. She knew that her husband would likely die in a short time and yet she signed the deed which gave defendants property worth $17,000 without any understanding concerning a debt of more than $10,000 which she knew she and her husband owed defendants. If she "thought" the conveyance should cancel the note, or that it should cause defendants to credit the proceeds of the insurance policy on the note, any exercise of reasonable care would have required that she have some sort of agreement with defendants to that effect. A simple written agreement would have been preferable, but, in any event, plaintiff could, at least, have had a verbal understanding as to a disposition of the note. It would appear that plaintiff was so careless in protecting her own interests that she is in no position to seek the relief of a court of equity in the situation presented. See Anno. "Unilateral Mistake—Rescission," 59 A.L.R. 809, 818.

Plaintiff has also cited the case of Saline County v. Thorp, 337 Mo. 1140, 88 S.W.2d 183, but that case involves such an entirely different factual situation than the case before us that we do not consider it applicable.

For approximately four years defendants occupied the house in question while it belonged to Jean and Helen and did not pay any rent. It has been agreed that the reasonable rental value of the property during that period was $125 per month. As an alternative contention plaintiff says that she (individually and as executrix) is entitled to recover the reasonable rental value of the property for that period and to have that amount offset against the amount due on the note. No authorities are cited in support of that contention. We think it is apparent that Jean and Helen did not intend that defendants pay any rent. That would appear to be tacitly conceded. We observe that they gave defendants a rental allowance of $75 per month for a year before they moved into this property. During that time they owed the note in question but they did not request that the money given defendants to pay the rent be credited as payments on the note. Under the circumstances shown we do not see any basis for allowing plaintiff an offset for the amount of the reasonable rental value of the property. We have concluded that the trial court properly ruled that plaintiff was not entitled to recover on her claim and that defendants were entitled to have judgment upon the note.

The note heretofore mentioned provided that it bear "interest from January 13, 1954 [its date] at the rate of 6% per annum." Defendants, upon their appeal, contend that the trial court erred in holding that they were guilty of laches in failing to demand payment of interest and therefore could recover interest only from the date they filed a demand in the probate court upon the note. Plaintiff has not filed any brief in which she contends that the ruling of the trial court in this respect was correct. In that connection we think it is significant that plaintiff did not plead the defense of laches until after judgment was entered. She was permitted to amend her reply by pleading that defense after judgment had been entered and while the motions for new trial were pending. We have not been able to find any case where the defense of laches has been pleaded in an action between the payee and the maker of a note. That defense ordinarily appears in cases where the holder of a note is seeking to recover from an endorser.

Section 401.060 (all statutory references are to RSMo 1959, V.A.M.S.) provides that the "maker of a negotiable instrument, by making it, engages that he will pay it according to its tenor * * *."

Also, it is provided in § 401.070 that "Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; * * *." Those provisions undoubtedly apply to interest as well as principal. The cases hold that in an action against the maker of a note, no demand for payment is necessary. Hackett v. Dennison, 223 Mo.App. 1213, 19 S.W.2d 541; Lambert v. Gutman, Mo.App., 171 S.W.2d 735. The note in question became due one year after its date. Therefore, the principal came due on the same date as the interest for the first year. We can see no logical reason why there would be a duty to demand the interest when it became due, when there was unquestionably no duty to demand the principal. In accordance with the provisions of the foregoing statutes, we rule that there was no duty upon defendants, in the situation here presented, to demand the payment of interest from the makers of the note sued on. Moreover, laches is not mere delay but delay that works a disadvantage to another. Kizior v. City of St. Joseph, Mo.Sup., 329 S.W.2d 605. In the case at bar there is no evidence to indicate that Jean and Helen were in any manner prejudiced by the failure of defendants to demand the payment of interest from time to time. We accordingly rule that defendants were entitled to a judgment on their counterclaim for all of the interest that had accrued since the date of the note.

The judgment for defendants upon plaintiff's claim is affirmed, and the judgment on the counterclaim is reversed and the cause remanded with directions to the trial court to enter a judgment thereon for defendants in accordance with the views herein expressed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.