UAW–CIO LOCAL #31 CREDIT
UNION, Appellant,

v.

ROYAL INSURANCE CO.,
LTD., Respondent.

No. 61420.

Supreme Court of Missouri,
En Banc.

Feb. 11, 1980.

Dennis G. Muller, Kansas City, for appellant.

Danny L. Curtis, Niewald, Risjord & Waldeck, Kansas City, for respondent.

ALDEN A. STOCKARD, Special Judge.

UAW–CIO Local No. 31 Federal Credit Union (hereafter "Federal"), as the holder of a dishonored draft brought suit for the face amount of the draft against the maker, Royal Insurance Co., Ltd., (hereafter "Royal"). After judgment in favor of Royal, an appeal was taken by Federal to the Missouri Court of Appeals, Western District, which affirmed the judgment. Upon application of Federal we ordered the case transferred to this court, and it will be determined here as on original appeal.

On May 8, 1974, Royal issued its draft in the amount of $12,000 "payable through" the Morgan Guaranty Trust Company of New York to Gary E. Terrell in settlement of a claim on an insurance policy for fire damage to premises located at 3031 North 11th Street, Kansas City, Kansas. On the following day the attorney for Mr. and Mrs. Louis Wexler notified Royal that his clients had an insurable interest in the damaged property. As a result Royal immediately "stopped payment" on the draft. On that same day the draft was indorsed in blank by Gary E. Terrell and also by his father, Wilson Terrell, and it was deposited by Wilson Terrell in his "share account" with Federal. Immediately following the deposit, Wilson Terrell withdrew $1,000. On the following day, May 10, he made three additional withdrawals totaling $8,008.60. On May 13 Federal credited the balance of a loan account of Wilson Terrell by transferring $771.54 from his share account. Wilson Terrell subsequently withdrew $745 from the share account.

Immediately upon receipt Federal indorsed the draft and deposited it in its account at the Brotherhood State Bank of Kansas City, Kansas, which, after indorsement, forwarded it through the bank clearing channels to the Morgan Guaranty Trust Company. It was then presented by that bank to the New York office of Royal whose "Cashier's Department" returned it to Morgan with the notation dated May 14, 1974, "payment stopped." The draft was then returned to the Brotherhood Bank, which on May 30 returned it to Federal together with notice that Federal's account had been debited $12,000.

Upon the receipt by Federal of this dishonored draft, Shirley Gans called Wilson Terrell. He referred Shirley Gans to Lester Leamon of Leamon Adjustment Company, Royal's adjuster on the fire loss. She stated to Mr. Leamon that she had the dishonored draft and she explained her interest by reason of the "stop payment." Mr. Leamon stated that "there evidently had been another lien on the property that Mr. [Gary] Terrell owned and that that was the reason for them [Royal] stopping the payment." Shirley Gans stated that as a result of her conversation with Mr. Leamon she received the "impression" that the situation was being clarified. Mr. Leamon did not ask that the dishonored draft be returned to him or to Royal.

In August, 1974, Shirley Gans telephoned Paul Niewald, an attorney for Royal, because she had obtained information from Wilson Terrell that new drafts were to be issued. She inquired whether Federal's name could be placed on the larger of two separate drafts that were to be issued to Gary Terrell for the insurance settlement. Mr. Niewald asked her if Federal had any interest in the property, and according to her she answered that it had no interest in the property; "just the check." Mr. Niewald replied that Federal could not have its name on the draft. Shirley Gans could not recall whether she told Mr. Niewald that she had the dishonored draft in her possession.

Paul Niewald testified that he was employed in the late summer of 1974 to advise Royal about payment of a fire loss at 3031 North 11th Street, Kansas City, Kansas. He recalled a telephone conversation in Au-

gust 1974 with a lady from a credit union who inquired whether the credit union could be included as a payee on a draft to be issued by Royal in payment of a fire loss, and he advised her that it could not. He admitted, somewhat equivocally, that he "probably" knew a draft had previously been issued and that a stop payment had been ordered.

Although Royal had on May 8 issued a draft in the amount of $12,000 to Gary Terrell in full payment of the fire loss, on August 12, 1974, it issued two additional drafts, one in the amount of $2,849.28 payable to Gary Terrell and to the Wexlers and their attorney, and the second in the amount of $9,150.72 payable to Gary Terrell alone, without receiving back the first draft or determining its whereabouts. Both drafts issued on August 12 were subsequently honored and paid.

Subsequent to receiving the dishonored draft Federal contacted Wilson Terrell, its immediate indorser, and although the record is incomplete in this respect, it apparently remained in contact with him in an effort to obtain payment. No demand for payment was made directly to Royal until January 1975, and payment was then refused. Federal filed this suit against Royal for the face amount of the draft on February 10, 1975.

■ The $12,000 draft drawn on May 8, was not drawn by Royal without recourse, § 400.3–413(2).[1] It was drawn on itself payable through the Morgan Guaranty Trust Company which resulted in the draft having the status of a note, § 400.3–118, and in Morgan Guaranty Trust Company being a "collecting bank" to make presentment to Royal's New York office. § 400.3–120. Royal states to this court in its brief that it "did not contest the authenticity of the instrument or any signature." Federal accepted the instrument for value in good faith and without notice of any defense or that payment had been or would be stopped. There is no question but that the $12,000 draft was a negotiable instrument

within the meaning of § 400.3–104, and that Federal was a holder in due course. ∘

■ Royal asserts, however, that Federal "cannot now claim the rights of a holder in due course [because] that issue was not submitted [to the jury] for determination." But, all the facts necessary to establish Federal as a holder in due course were admitted or established by substantial evidence, and Royal presented no evidence to refute that status. Therefore, there was no live issue as to any of the matters essential to Federal's status as a holder in due course, and it was not necessary that such issue be submitted to the jury. *John Deere Company of St. Louis v. Davis*, 335 S.W.2d 686, 689 (Mo.App.1960).

It is provided in § 400.3–307(2) that "When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense."

■ Royal submitted an affirmative defense, which may best be described by setting fourth its Instruction No. 3, which was objected to by Federal, and which was as follows:

Your verdict must be for the defendant if you believe:

First, plaintiff paid Wilson M. Terrell on the draft issued May 8, 1974, before defendant had the opportunity to accept or reject it, and

plaintiff failed to notify defendant of its claim as a holder of the draft in question and demand payment therefor until after defendant had issued two subsequent drafts, and

plaintiff's delay in failing to demand payment was unreasonable under the circumstances; and

Second, plaintiff's conduct or failure to act as submitted in paragraph First, caused or contributed to any loss or damage plaintiff may have sustained.

In support of this theory of defense Royal cited § 400.3–502 to the trial court. Paragraph (1) of that section pertains to unex-

1. All statutory references are to RSMo 1978.

cused delays in making "necessary presentment or notice of dishonor," and paragraph (2) provides that "Where without excuse a necessary protest is delayed beyond the time when it is due any drawer or endorser is discharged." But, Subparagraph (b) of § 400.3–511(2) provides that "presentment or notice or protest" is "entirely excused" when "such party [the one to be charged] has himself dishonored the instrument or has countermanded payment * * *." Royal stopped payment on the draft. Therefore, there was no "necessary" presentment, notice of dishonor or protest, although presentment was in fact made. Section 400.3–502 does not authorize or support the submission of Instruction No. 3 as a defense to Federal's action on the draft.

◼ Stopping payment on the draft did not absolve Royal from its obligation thereon to a holder in due course. *Di Franco v. Steinbaum*, 177 S.W.2d 697, 701 (Mo.App. 1944); *Martin v. Ficklin*, 240 Mo.App. 1225, 227 S.W.2d 69 (1950); *Maryland Casualty Co. v. Dobbin*, 232 Mo.App. 557, 108 S.W.2d 166, 176 (1937); 10 C.J.S. Bills and Notes § 35(e); 11 Am.Jur.2d Bills and Notes § 590. Instruction No. 3 submits as a basis of avoiding liability on the part of Royal that Federal paid Wilson Terrell before Royal had the opportunity to accept or reject it. Royal cites no case which holds that it is wrongful for a holder to pay the payee or indorsee of a negotiable instrument immediately upon receipt, or that by doing so the maker's liability on the instrument is terminated. We have found but one case in which a similar contention was made. In *Central Bank and Trust Co. v. First Northwest Bank*, 332 F.Supp. 1166, 1168 (E.D.Mo. 1971), affirmed, 458 F.2d 511 (8th Cir. 1972), an insurance company deposited to its account in plaintiff-bank a cashier's check drawn on defendant-bank, and plaintiff-bank then permitted immediate withdrawals. The check was presented for payment and defendant-bank refused to honor it. As a defense defendant-bank asserted, as paraphrased by the court, "that plaintiff [bank] should not have disbursed or paid out any monies or funds upon any item placed with it for collection until that item had cleared or been paid because of past activities by [the depositor] which plaintiff [bank] should have been aware of." In ruling that plaintiff-bank was entitled to judgment "as a matter of law" the court commented: "We are directed to no authority which requires the depositing bank to await collection of the cashier's check before granting credit to the depositing customer."

◼ In further support of its contention that Federal should not have permitted withdrawals until the draft had been cleared, Royal cites and relies on cases which hold that payment made by use of a check or draft is conditional only, *Groomer v. McMillan*, 143 Mo.App. 612, 128 S.W. 285 (1910), that such method of payment does not constitute an assignment of money in the payor bank to the payee, *Kellogg v. Citizens' Bank of Ava*, 176 Mo.App. 288, 162 S.W. 643 (1914), and that absent an agreement for other results, the delivery of a check to and its acceptance by a creditor does not constitute payment of the debt or obligation until the check is paid. *Bartleman v. Humphrey*, 441 S.W.2d 335 (Mo. 1969). It then asserts that because of the above rules "it is a rare and foolish businessman who treats a draft as identical to cash inasmuch as the drawer still has the power to stop payment." But, if that conduct is foolish, it is not because by stopping payment the maker is absolved from his obligation under the instrument, but for the reason the holder may find it impossible or difficult to enforce that obligation because of insolvency or absence of the maker, or for some other reason. The submission in Instruction No. 3, that Federal "paid Wilson M. Terrell on the draft * * * before [Royal] had the opportunity to accept or reject it," constituted no defense to Federal's suit on the draft, and in this respect the instruction was erroneous.

◼ Royal also argues that Federal was guilty of laches in not timely presenting a

claim[2] against Royal for the payment of the draft, and that the principle of equitable estoppel applies. This contention apparently is made in support of the second part of Paragraph First of Instruction No. 3.[3]

Royal has cited to us no case in which in an action at law brought prior to the period of limitations by a holder in due course against the maker of a negotiable instrument, the equitable doctrine of laches had been invoked to prevent recovery. In 12 Am.Jur.2d Bills and Notes § 1036, is the general statement that "It is well-settled law that in a suit upon a note mere laches, less than the period of the statute of limitations, does not bar recovery thereon." See also 10 C.J.S. Bills and Notes § 524. We have found only one case from this jurisdiction in which the defense of laches was relied on in a suit at law against a maker of a negotiable instrument, and that pertained to laches in making a demand for the payment of interest on the note. *Douglass v. Douglass*, 363 S.W.2d 566, 570–1 (Mo.1962). In that case the trial court entered judgment against the maker and in favor of the payees for the amount of the note, but held that the payees were not entitled to recover interest for the period from the date of the note until the date a demand was filed in the probate court against the estate of the maker because "they [had been] guilty of laches in failing to demand payment of said interest * * *." This court held: "The cases hold that in an action against the maker of a note, no demand for payment is necessary. * * * The note in question became due one year after its date. Therefore, the principal came due on the same date as the interest for the first year. We can see no logical reason why there would be a duty to demand the interest when it became due, when there was unquestionably no duty to demand the principal." In the course of the opinion it was stated: "We have not been able to find any case where the defense of laches has been pleaded in an action between the payee and the maker of a note." Laches is purely an equitable doctrine, and generally speaking it is peculiar to a court of equity. 27 Am. Jur.2d § 154. This is an action at law, and strictly speaking the doctrine of laches is not applicable. However, as stated in *Aetna Casualty & Surety Co. v. Traders National Bank & Trust Co.*, 514 S.W.2d 860 (Mo.App.1974), "a party to a negotiable instrument * * * may become barred by conduct from relying upon the terms of that writing, on principles of estoppel or waiver." Equitable estoppel is available in an action at law. *Brooks v. Cooksey*, 427 S.W.2d 498, 503 (Mo.1968). The terms "estoppel" and "laches" are frequently, though improperly, used interchangeably. As between the defenses of laches and estoppel, only the latter could be applicable to this case.

There clearly was no waiver in this case. "In order for waiver to be invoked, the party itself claimed to have waived must have intentionally relinquished a known right by express declaration or by acts so clear, unequivocal and decisive as to be inconsistent with any other explanation." *Aetna Casualty & Surety Co. v. Traders National Bank & Trust Co.*, supra. No such intentional relinquishment has been shown here of Federal's right of recourse as a holder in due course against the maker of the draft. As a matter of law the principle of waiver is not available to Royal as a defense.

Royal asserts that Federal should be estopped to recover in its suit on the

---

2. Upon receipt of the dishonored draft, Shirley Gans contacted Lester Leamon, Royal's agent to handle the adjustment of this particular claim, and she informed him that she had the dishonored draft and she explained Federal's interest. Mr. Leamon explained to her why Royal had stopped payment and apparently caused Shirley Gans to believe the matter would be satisfactorily handled. Mr. Leamon did not testify. Federal makes no such contention in its brief, but we fail to see why under Royal's theory of liability this communication to Royal's agent was not sufficient notice to Royal that Federal was the holder of the draft and that it expected payment.

3. In view of the result we reach, it is not necessary to determine whether the issue of laches or equitable estoppel was within the issues submitted by Instruction No. 3.

$12,000 draft because it "negligently and unreasonably delayed in demanding payment." Royal issued the second drafts on August 12, which was approximately 73 days after the dishonored draft was returned to Federal. Any delay on the part of Federal in making a demand on Royal for payment after August 12 is immaterial to Royal's claim of estoppel because Royal makes no contention that it took any action to its disadvantage after that date by reason of Federal's delay in making a demand for payment.

■ On August 12 Royal knew that the $12,000 negotiable draft dated May 8, 1974 was outstanding. It had previously delivered the draft to Gary Terrell and had not obtained it back. Royal was charged with knowledge that an outstanding negotiable instrument is subject to being transferred by the payee to a holder in due course, *Kirksey v. White*, 167 S.W.2d 387 (Mo.App. 1942); *Bost v. McFarland*, 229 Mo.App. 776, 81 S.W.2d 350 (Mo.App.1935), that when the maker of a negotiable instrument stops payment he is not absolved of his obligation thereon to a holder in due course, and that a holder in due course need not make presentment to the payor, *Burns v. Wiber*, 399 S.W.2d 446 (Mo.App.1966), or demand for payment to the maker, *Lambert v. Gutman*, 171 S.W.2d 735 (Mo.App.1943), before bringing suit on the instrument. See also *Hackett v. Dennison*, 223 Mo.App. 1213, 19 S.W.2d 541 (1929). Insofar as Royal bases its defense to Federal's suit on the draft on the theory of a "negligent" delay on the part of Federal in demanding payment, it is clear that Royal's issuance of the two drafts on August 12, 1974, when it knew the negotiable draft dated May 8 was outstanding and subject to being negotiated to a holder in due course, constituted contributory negligence on its part as a matter of law which directly caused or contributed to its loss.

■ In view of the total circumstances and particularly the evidence, though indeed meager, to the effect that

after the draft was returned Federal was in contact with Wilson Terrell, its immediate indorser, in an effort to obtain payment of the draft, we have grave doubts that it reasonably could be found that Federal was negligent in not making a demand on Royal for payment prior to August 12. But, for our present purpose, assuming Federal was negligent in this respect, Royal cannot, as a matter of law, invoke the principle of estoppel against Federal on the basis of that negligence. Negligence "to operate as an estoppel * * * must have been the neglect of some duty owing to the party claiming the estoppel or to the public generally." *Howard National Bank & Trust Co. v. Jones*, 238 S.W.2d 905, 909 (Mo.App. 1951); 31 C.J.S. Estoppel § 102. Royal points to no legally imposed duty on a holder in due course of a dishonored negotiable instrument to make immediate demand on the maker for payment. Also, it is the uniform rule that "in order to create an estoppel *by negligence* of the one estopped, the one claiming the benefit of the estoppel must himself be free from negligence." *Blue Grass Taxi Garage Co. v. Shepherd*, 304 Ky. 390, 200 S.W.2d 936, 939 (1947). See also *City of Tyler v. Bruck*, 267 S.W.2d 429 (Tex.Civ.App.1954); *Patten v. Santa Fe Nat. Life Ins. Co.*, 47 N.M. 202, 138 P.2d 1019 (1943); *Kloppenburg v. Mays*, 60 Idaho 19, 88 P.2d 513 (1939); *Andrae v. Wolgin*, 257 Mich. 572, 241 N.W. 876 (1932); *Continental Credit Corporation v. Norman*, 303 S.W.2d 449 (Tex.Civ.App.1957); *American Surety v. Smith, Landeryou & Co.*, 141 Neb. 719, 4 N.W.2d 889 (1942); *El Paso Nat. Bank v. Southwest Numismatic Invest. Group, Ltd.*, 548 S.W.2d 942 (Tex.Civ.App. 1977); *Cadwallader v. Clifton R. Shaw*, 127 Me. 172, 142 A. 580 (1928). Stated another way, equitable estoppel cannot be used to shift a loss from one careless person to another where the loss could not have occurred without the negligence of the party relying on an estoppel based on another's negligence. *C. H. Rugg Co. v. Ormrod*, 198 N.Y. 119, 91 N.E. 366 (1910); *Andrae v. Wolgin*, supra, *City of Tyler v. Bruck*, su-

pra; 31 C.J.S. Estoppel § 102; 28 Am.Jur.2d Estoppel and Waiver § 61.[4]

▆▆▆ Royal also asserts an estoppel based upon silence or inaction on the part of Federal. See 28 Am.Jur.2d Estoppel and Waiver § 53, where it is stated that "an estoppel may arise under certain circumstances from silence or inaction as well as from words or actions." See also *Medical West Building Corp. v. E. L. Zoernig & Co.,* 414 S.W.2d 287 (Mo.1967). However, it is equally clear that mere innocent silence or inaction will not work an estoppel, *Mahen v. Tavern Rock,* 327 Mo. 391, 37 S.W.2d 562 (1931); *Chrysler Credit Corp. v. Friendly Ford, Inc.,* 535 S.W.2d 110 (Mo.App.1976), but that there must be a right and opportunity to speak, and in addition, an obligation or duty to do so. *Karszina v. Kelsey,* 262 S.W.2d 844 (Mo.1953). "[S]ilence may properly be relied upon only when the party to be estopped is under a duty to speak up and not remain silent." *Medical West Building Corp. v. E. L. Zoernig & Co.,* supra at p. 293; *Wilkinson v. Lieberman,* 327 Mo. 420, 37 S.W.2d 533, 536 (1931). "For a 'standing by' to become the predicate of equitable estoppel, it is necessary that the person remaining silent be under a duty to speak." *State on Inf. of McKittrick ex rel. City of California v. Missouri Utilities Co.,* 339 Mo. 385, 96 S.W.2d 607, 615, 106 A.L.R. 1169 (1936). See also *Mills v. Taylor,* 270 S.W.2d 724 (Mo.1954). Royal does not set forth what it considers to have imposed a duty on Federal to make demand on Royal prior to August 12 for payment. Certainly, Federal had no duty to anticipate that Royal would

be so foolish as to issue additional drafts in payment of the same fire loss without accounting for the previously issued negotiable draft. As indicated, on August 12 Royal knew that the draft issued on May 8 was outstanding, that it was negotiable, and that it was subject to being negotiated into the hands of a holder in due course, and there is no duty on one party to disclose matters of which the other party has actual or constructive knowledge, *Karsznia v. Kelsey,* supra; *Wood v. White Eagle Oil & Refining Co.,* 220 Mo.App. 1004, 274 S.W. 894 (1925); or where the parties have equal means of knowledge. *Wilkinson v. Lieberman,* supra. Also, as Royal admits in its brief, the "Essential elements of estoppel" include the "Ignorance of the party [invoking] the estoppel." See *Nelson v. Chicago Mill & Timber Corp.,* 76 F.2d 17, 100 A.L.R. 87 (8th Cir. 1935). Royal is in no position under the circumstances to contend that it was ignorant of the fact that the negotiable draft issued by it on May 8 was outstanding, and that it was likely to be negotiated into the hands of a holder in due course. It was not Federal's delay in demanding payment of the draft that caused the detriment to Royal, but it was Royal's negligence in issuing additional drafts for the payment of the fire loss without accounting for the previously issued negotiable instrument which it knew was outstanding and upon which it knew it was liable to a holder in due course.

As provided in § 400.3–307(2) and previously noted, when the signatures are admitted or established, which occurred in this

4. Royal argues in its brief that Federal's failure to notify it of Federal's claim as a holder of the draft and to demand payment "created a dilemma" for it. Royal states that it recognized that it had the right to countermand payment, but that in doing so it took the "consequences of such act." It argues that on the other hand it "faced the threat of legal action on the part of its insured for vexatious delay in resolving his claim for fire loss on the policy of insurance issued by Royal," citing §§ 375.296 and 375.420. Resolution of this dilemma, Royal argues, was "dependent upon reasonably quick action by any holder of the draft who may have had a right against Royal under § 400.3–507(2) * * upon dishonor of the draft." This argument at

least implies that Royal issued the two drafts dated August 12 as the result of a considered judgment to resolve its "dilemma," and not as the result of negligence. In either event the argument is without merit. First, there is no evidence of any "threat of legal action" on the part of Gary Terrell, the insured. Second, Gary Terrell had already received from Royal a draft in the amount of $12,000 in payment for his fire loss, which he had negotiated by indorsing it in blank, presumably for value. In addition, any delay occurring after May 8, 1974 in resolving his claim resulted from his failure to inform Royal of the interest of others in the insured property.

case, the production of the draft entitled Federal, as holder thereof, to recover unless Royal established a defense. We hold that as a matter of law the defenses asserted by Royal are of no merit. Therefore, the judgment is reversed and the cause remanded for entry of judgment on the draft in favor of Federal.

BARDGETT, C. J., and DONNELLY, SEILER and MORGAN, JJ., concur.

RENDLEN and WELLIVER, JJ., concur in result.

HIGGINS, J., not sitting.