JESSE FRAZIER, RESPONDENT, v. LLOYD RADFORD ET AL., APPELLANTS.*
—23 S. W. (2d) 639.

Kansas City Court of Appeals. December 6, 1926.

*Roy McKittrick* for respondent.

*Lamb & Lamb* for appellants.

ARNOLD, J.—This is a suit in equity whereby plaintiff sues in his own behalf and as the assignee of eight claims against defendant

for labor done and material furnished in the fulfilment of a certain contract hereinafter mentioned. The defendant Bee Branch Drainage District, as its name implies, is a drainage district, and is incorporated under the laws of the State of Missouri.

On August 5, 1922, the said district entered into a contract with the Central Construction Company, a partnership composed of the individual defendants herein, by which the construction company agreed to do the work necessary to carry out a plan of reclamation which had been adopted by the district. Prior to the commencement of the work, the said construction company, with the written consent of the district, assigned its contract to the R. W. Cooper Engineering Company. The said engineering company, in December, 1922, began the work of reclamation under the assigned contract and continued it until June, 1923, when the work was abandoned by that company but was completed in November, 1923, by the construction company. While the engineering company was engaged in the performance of the contract, it employed plaintiff and his assignors to perform certain work and furnish certain materials for which they were unable to obtain payment, either from the engineering company or the other defendants. The suit was instituted in nine counts, each of which covers the claim of an individual who did certain work and furnished materials as set forth.

The petition seeks to hold the individual defendants liable for the demands sued for and to have judgment against them satisfied out of certain money alleged to be in the hands of the district and due said defendants on account of the work, and asks that the drainage district be restrained from paying out any money in its hands to said defendants, and that it be ordered to pay plaintiff out of said money belonging to said defendants the sums sued for, with interest and costs. The court rendered a decree against the individual defendants on each of the nine counts, adjudging that plaintiff recover from them "out of the funds in the hands of the drainage district," ordering the amount paid to plaintiff within thirty days, restraining said defendants from collecting from the district and the district from paying them the amount found to be due plaintiff.

Personal service was had upon defendant English and plaintiff sought to get service by publication on the other individual defendants. The affidavit upon which the order of publication was based was attacked by defendants Lloyd Radford and J. W. Radford in the trial court by the filing of a plea to the jurisdiction and a motion to quash the service on them on the ground that the affidavit on which the order of publication was based did not give the court jurisdiction of such defendants. There was no personal appearance of said two defendants at the trial. Among other things, the affidavit alleges that:

" . . . this affiant has good reason to believe, and does believe that the defendants, Lloyd Radford and J. W. Radford are nonresidents of the State of Missouri; that the said defendants Lloyd Radford and J. W. Radford have concealed themselves so that the ordinary process of law cannot be served upon them."

The affidavit is unquestionably defective, under the rulings of the Supreme Court, and no jurisdiction was conferred over the defendants Lloyd Radford and J. W. Radford. The allegation that said defendants were nonresidents is inconsistent with the statement that they had concealed themselves so that the ordinary process of law could not be served upon them; the last allegation has reference to residents of the State and not to nonresidents. [Coombs v. Crabtree, 105 Mo. 292, 297.] The allegations of nonresidence and of concealment are contradictory and nullify each other as completely as if neither had been written in the affidavit. For this reason there is no allegation in the affidavit which authorized the order of publication, and the judgment against said two defendants is void. [Hinkle v. Lovelace, 204 Mo. 208, 220.]

Defendants urge that in this situation the effort to sustain an equitable garnishment against the drainage district must fail. We think this position untenable. It is true that under the common law contracts of parties were joint and not joint and several. However, our statutes have changed the common-law rule and declared such contracts joint and several, so that suits may be prosecuted against any one or more of those liable. Section 2155, Revised Statutes 1919, provides:

"All contracts which by the common law are joint only shall be construed to be joint and several."

And Section 2158 provides:

"In all cases of joint obligations and joint assumptions of copartners or others, suits may be brought and prosecuted against any one or more of those who are so liable."

In construing these sections, the Supreme Court in Bagnell v. Railway Co., 242 Mo. 11, l. c. 20, said:

"Conceding that at common law, the contract as stated in the petition was a joint one, as was held on the former appeal, yet under the express provisions of Section 2769, Revised Statutes 1909, which was enacted long prior to the date of this contract, all contracts which, by the common law, are joint only, are declared to be joint and several; and by Sections 1981 and 2772, Revised Statutes 1909, it is provided that in all cases upon joint obligations and joint assumptions of copartners or others, suits may be brought against any one or more of them, and that in all such actions the plaintiff shall not be nonsuited by reason of his failure to prove that all the defendants are parties to the contract, but may have judgment against such of them as he shall prove to be parties thereto.

"Under the provisions of those sections of the statute, and the numerous decisions of this court construing them, for all practical purposes, all contracts which at common law were joint only are now joint and several, and any one or more of the obligees thereto may be sued, and a recovery had against those only who the evidence shows are liable thereon."

To the same effect is Stanley v. Whitlow, 181 Mo. App. 461, 465, an opinion by this court. Since, under these decisions, plaintiff had a right to sue and obtain judgment against English alone and since English had a contract with the drainage district for his benefit and that of his assignors, it is clear that he had a right to an equitable garnishment against the drainage district, and his failure to obtain proper service against defendants Lloyd Radford and J. W. Radford did not destroy his right to collect his debt from English who was liable, under the rule, for the entire sum; or his right to compel the drainage district to apply the money due English and his partners in payment thereof. This being a suit in equity the court had jurisdiction of both English and the property belonging to the partnership. The decree and judgment of the trial court shows English to have been insolvent and that the Central Construction Company had no property in Missouri. In this state of affairs the partnership is dissolved and a court of equity has been called upon to liquidate its affairs.

The partner English is entitled to have all of the partnership assets used in payment of the partnership debts, and plaintiff is subrogated to the rights of English therein. Directly in point is the opinion of the Supreme Court in Wade v. Bank, 221 S. W. 364, 371, where it is said:

"The partners themselves do not have any specific lien on the property. Each, however, has as against the other the right to have the partnership properly applied to the payment of the partnership debts, and this right or equity under certain circumstances inures to the benefit of firm creditors. But as to such creditors this equity is a derivative one. It is not held or enforceable in their own right. It is practically a subrogation to the equity of the individual partner, . . . . When a court of equity is called upon to wind up and liquidate a partnership, whether upon dissolution by death or insolvency, or upon other grounds involving its jurisdiction, it enforces a right in favor of the firm creditors to have their debts first paid out of the partnership assets before any application thereof is made to the payment of the debts of the individual creditors or any distribution is made among the partners."

This opinion further states, l. c. 371:

"While it might be inferred from the history of the transaction as a whole as narrated in the pleadings that the pledged property constitutes all the partnership assets, such inference is not a necessary

one, and there is no averment that such is the fact; nor does it appear from either that the firm is insolvent; . . . There is nowhere in either an allegation that the court has acquired, or a suggestion that it should assume jurisdiction of all of the partnership property for any purpose; . . ."

There being no question of waiver in the case at bar, English had the right to have the partnership assets applied to the payment of the partnership debts. The petition alleged and the trial court found that the money held by the drainage district is all the assets of the partnership in the State; that the partnership and defendant English are insolvent; that the court has jurisdiction of English and of said property. In this situation the holding in the Wade case, supra, at page 372, is applicable:

"There is also the further allegation that some of them do not reside within the jurisdiction of the court. But it is not necessary for appellant to pursue the insolvent ones or those in foreign jurisdictions."

Under this ruling, it is not necessary that plaintiff pursue the insolvent partner English, nor those living in foreign jurisdictions. This court held in Tennant et al. v. McKean, 46 Mo. App. l. c. 492:

"Each partner has a lien on the whole effects, which he, as such partner, during the life of the partnership, can see is utilized to the payment or discharge of the partnership debts. For he, being liable for the whole debt, is entitled as a right inherent in the relation he bears to the partnership and the property, to have the effects used for the payment of partnership debts. The right of the creditor is wholly derivative—and is derived through the partners."

The opinion in the Tennant case follows the general rule as found in 30 Cyc., pp. 537, 538, as follows:

"Partners, however, have an equitable lien, upon all firm property, by reason of the partnership relation, for the purpose of having it applied to the payment of firm debts. Through this lien of the partners, firm creditors are able to secure the application of firm property to the payment of their claims, either directly, or in subrogation to the rights of the parties, . . ." [See also Hundley v. Farris, 103 Mo. 78, 87; Goddard-Peck Groc. Co. v. McCune, 122 Mo. 426, 433. Applying the rule above enunciated, it is clear the judgment against the drainage district must be affirmed.

The only question that remains is whether the court properly rendered judgment against the defendant English on whom personal service was had, no point being made that the proceeding abates by reason of the failure of plaintiff to get service on the other partners.

The parties seem to agree that a personal judgment was rendered against English by the trial court and there was no objection at the trial or now as to the case being tried as to him as a suit in equity,

so we will proceed to decide the case on the theory on which it is submitted to us.

The various assignments to plaintiff of the demands sued upon were in writing but the writings did not state the name or names of the party or parties owing the respective claims. They merely recited that a certain sum was due for certain work or materials furnished "on the improvements under construction in Bee Branch Drainage District," the character of the work and materials being specified and the amount due. The various assignments recited that the claim was assigned to plaintiff and authorized him to collect and enforce the payment thereof. It is contended that these assignments are void as they did not comply with the provisions of section 2171, Revised Statutes 1919, providing:

"All assignments of wages, salaries or earnings must be in writing, with the correct date of the assignment and the amount assigned and the name or names of the party or parties owing the wages, salaries and earnings, not earned at the time the assignment is made, shall be null and void."

This contention seems to have been first thought of in this court. We have examined the record and fail to find that defendants at any time at the trial called in question or mentioned the statute. The statute is not mentioned in the pleadings although the answer of the defendant English recites that he denied that plaintiff "acquired for value any right to maintain an action" under the various counts of the petition exclusive of the one under which plaintiff sues for his own individual work. When we come to the objection to the assignments at the trial, we find that the objection was not based upon the statute but merely that the assignments themselves were not valid because they did not "purport to be accounts for services rendered the R. W. Cropper Engineering Company;" in other words, the objection did not go to the question that the assignments were not in writing in the manner and form provided by the statute but that they were void as not sufficiently definite to constitute valid assignments without reference to the statute. We think that defendants are not in a position to make the point now urged even though it be admitted that the statute has application to a situation of the kind involved in this suit. [Churchill v. Lammers, 60 Mo. App. 244; Van Idour & Company v. Nelson et al., 60 Mo. App. 523; Miller v. Harper, 63 Mo. App. 293.]

There is no merit in the contention that the demurrer to the petition should have been sustained because plaintiff failed to file the contract between the drainage district and the construction company. [National Union Fire Ins. Co. v. Nevils et al., 274 S. W. 503, 505.]

Defendant English contends that he is not liable for the work and materials furnished the engineering company. In deciding this point we are confined to the terms of the contract between the construction

company and the drainage district as there is nothing in the record to show that there was a separate agreement had between the construction company and the engineering company at the time of the assignment of the contract to the latter. The assignment seems to have been an ordinary assignment of a contract without any further agreement and it is substantially admitted by the parties that English's liability is to be determined from the contents of the original contract for the doing of the work. The contract provides that "any assignment or transfer of this, or any part of this contract to others shall not relieve the contractor or his sureties from responsibility assumed herein." We think that there is no question but that under this and other provisions of the contract to be presently mentioned, defendant English and his partners were liable for all labor and materials furnished to the engineering company, the assignee, for the work, and the fact that the contract was sublet did not relieve English and his partners from paying for all the labor and materials incorporated in the work, or that were furnished therefor.

However, we do not think that the defendant English is liable on the J. F. Roling & Sons' claim, covered by count eight of the petition. The evidence shows that J. F. Roling & Sons was composed of Mr. Roling and his two sons who operated a machine shop in Salisbury. They employed two other men and the five did work in the shop; they made certain repairs on the dredging machine used by the engineering company in the work; these repairs were made upon parts that were brought into the shop; however, there may have been some repairs made on the dredging machine on the work. The contract provides that the contractor should furnish all of the plant and equipment necessary to complete the work and that:

"It is further agreed by said contractor that he shall if so requested, furnish the board with satisfactory evidence that all persons who have done work or furnished material under this contract have been duly paid for such work or material, and in case such evidence is demanded and not furnished as aforesaid, such amount as may in the opinion of said board be necessary to meet the claim of the persons aforesaid may be retained from the money due said party of the second part under the contract until satisfactory evidence be furnished that all liabilities have been fully discharged."

It further provides:

"The contractor shall promptly make payments to all persons supplying labor and material in the prosecution of the work. The contractor shall make such financial arrangements that the employees will not be subjected to loss. . . .

"The contractor shall specify in his proposal or bid the location, size, kind and type of equipment that he proposes using on the work, and if his bid is accepted it shall be considered as acceptable to the engineer to be used on the work, this shall not be construed as pre-

venting the engineer from requiring the contractor to replace, renew or repair any defects in the equipment that may develop after its installation." . . .

"In consideration of the payments to be made as hereinafter provided, and of the performance of the district (party of the first part) of all matters and things by it to be performed as herein provided, the contractor (party of the second part) agrees, at his own sole cost and expense, to perform all the labor and services, to furnish all the materials, plant and equipment necessary to complete," the work.

It further provides that the contractor:

". . . agrees to accept, as full compensation, satisfaction and discharge, for all work done and all materials furnished, and for all costs and expenses incurred, and for each and every manner, thing, or act performed, or furnished," etc., certain payments of money to be made by the district; that the contractor should be paid: ". . . the full costs of loading, transportation and erection of the plant or equipment to be used in the construction of the work contracted for herein and the payment for such supplies as are necessary to the proper and practical installation of the same."

It does not appear that the repairs in question were made in connection with the installation of the machinery or upon requirements of the engineer.

The contract provides that in case of its assignment the construction company should not be relieved from the responsibility assumed therein and the question therefore presents itself as to what the construction company assumed to do in the way of paying for labor, materials, etc. In this connection the contract recites that the "Contractor shall promptly make payments to all persons supplying labor and materials in the prosecution of the work." There are other provisions of the contract bearing upon what the contractor was required to do in the way of furnishing the plant and equipment, etc., and it contains a provision to the effect that the engineer of the drainage district could require the contractor to "replace, renew or repair any defects in the equipment that may develop after its installation," the equipment itself having been approved by the district when the bid was accepted. It also provides for payment by the district to the contractor of the cost of installing machinery, but when it comes to the part wherein the rights of third parties doing work or furnishing things of value are involved and attempted to be looked after, it merely provides that the contractor shall pay all persons supplying labor and material in the prosecution of the work. It seems to us to be apparent that the provisions of the contract in reference to the responsibility for said claims of third persons that the original contractor should be under in case of an assignment of the contract, covered merely the payment for labor and materials that

has been performed or supplied and that had gone into and become a part of the work or incorporated into the improvement, or materials furnished or used and employed in the performance of the work contemplated by the contract, and not to labor upon or materials furnished for the equipment of the contractor. [Kansas City v. Youmans, 213 Mo. 151, 180; Hilton v. Construction Co., 202 Mo. App. 672; Standard Boiler Works v. National Surety Co., 43 L. R. A. (N. S.) 162 (Wash.); United States to use of Thomas Laughlin Company v. Morgan, 111 Fed. 474; City of Alpena v. Title Guaranty & Surety Co., 123 N. W. 1126 (Mich.); Empire State Surety Co. v. City of Des Moines, 132 N. W. 837 (Iowa).]

For reasons above stated the judgment will be affirmed on condition that within ten days from date of filing this opinion plaintiff will remit from the judgment the sum of $246.60, being the amount recovered on account, covering the labor and materials furnished by J. F. Roling & Sons; otherwise the judgment will be reversed and the cause remanded. *Bland, J.,* concurs; *Trimble, P. J.,* absent.