**Florence S. BROOKS, Appellant,**

v.

**Hobart L. COOKSEY, Respondent.**

**No. 52616.**

Supreme Court of Missouri,
Division No. 1.

May 13, 1968.

Biggs, Hensley, Curtis & Biggs, George R. Wolf, St. Louis, Hansen & Stierberger, E. A. Stierberger, Union, for appellant, Florence S. Brooks.

Daniel, Raskas, Ruthmeyer & Schneider, H. Jackson Daniel, Bernard A. Ruthmeyer, Jr., St. Louis, for respondent, Hobart L. Cooksey.

J. MORGAN DONELSON, Special Judge.

Plaintiff brought action for $67,040 damages for breach of contract to sell certain bank stock owned by defendant and loss of the bargain of sale of said stock and other stock owned by plaintiff in said bank to third parties. The trial court sustained defendant's motion for summary judgment and entered its order for defendant.

We will review the record in the light most favorable to plaintiff against whom judgment has been rendered on motion for summary judgment, and we will treat those facts set forth in the affidavits, and not denied by affidavit, as admitted. Wood v. James B. Nutter & Co., Mo., 416 S.W.2d 635; Grubb v. Leroy L. Wade & Son, Inc., Mo., 384 S.W.2d 528. The burden is upon the defendant, the moving party, to show by unassailable evidence that there is no issue of fact remaining in the case and that he is entitled to summary judgment as a matter of law. Norman v. Willis, Mo.App., 402 S.W.2d 46; Nelson v. Browning, Mo., 391 S.W.2d 873.

The sufficiency of plaintiff's and defendant's pleadings are not in issue, but we shall briefly summarize them. This action was commenced on the 19th day of November, 1965. On May 3, 1966, plaintiff filed her first amended petition. It alleged that plaintiff and defendant individually owned certain bank stock, that on January 9, 1965, defendant contracted to sell plaintiff his stock for an agreed amount with payment therefor upon delivery of stock certificates, and that defendant failed to perform his agreement although plaintiff was ready and willing to perform her part of the agreement. Plaintiff further alleged that she had contracted with third persons for the sale of her stock and that to be acquired from defendant, and she was unable to perform her agreement with third parties. She further set forth that the stock had since lost all market value, and because of defendant's breach of contract she was damaged in the sum above set forth plus interest and costs.

On May 26, 1966, defendant filed his amended answer which admitted the residency of each party and ownership of the respective numbers of said bank stock, but

denied all the other allegations. He also raised the defense of statute of frauds. On June 8, 1966, the plaintiff filed her reply which denied the applicability of the statute of frauds, because of partial performance by defendant in voting the stock as directed by plaintiff. She also asked that defendant be estopped to assert said defense because of her change of position by contracting to sell her stock and defendant's stock to third parties to her gross injustice and damage. Thereafter on August 2, 1966, after notice and by leave of court defendant filed his second amended answer. It also admitted the residency of the parties, admitted the number and ownership of said bank stock by defendant, but neither admitted nor denied plaintiff's ownership of her bank shares, and requested strict proof thereof. It denied all other allegations of the amended petition and further answered as follows:

"5. Answering further, Defendant says that at the time of the alleged agreement and bargain by Defendant, or at any time thereafter, to sell to Plaintiff the goods, to-wit: stock, mentioned in Plaintiff's Petition, no note or memorandum in writing was made thereof, nor signed by this Defendant, nor was any money or any other consideration paid by Plaintiff to Defendant in part payment, nor anything given by Plaintiff to Defendant, in earnest to bind the alleged bargain, nor was there any delivery by Defendant to Plaintiff or any acceptancy by Plaintiff of any part of the stock alleged by Plaintiff to be the subject matter of the alleged agreement set out in Plaintiff's Petition, thus barring Plaintiff's claim under the Statute of Frauds."

There is no showing in the record that plaintiff filed a reply to the second amended answer or that plaintiff's original reply was refiled. However on August 25, 1966, defendant filed motion for summary judgment as provided by Civil Rule 74.04, V.A.M.R., and notice of said motion for hearing on September 7, 1966, together with the affidavit of Hobart L. Cooksey, defendant herein. This affidavit stated that he and plaintiff were parties to the suit, and set forth paragraph three (3) of plaintiff's first amended petition in regard to the agreement to sell the bank stock, the number of shares, etc.; that neither he nor anyone in his behalf entered into "any agreement in writing", with plaintiff at or near the time or under terms set forth in plaintiff's petition; that there was never any note or memorandum signed by defendant which set forth the terms of the agreement; that there was no monetary or other consideration paid by anyone to defendant in part or full payment of any agreement, oral or written, by plaintiff or in her behalf; and further that there was neither delivery nor acceptance of any of defendant's shares of stock.

Plaintiff filed her counter-affidavit on September 7, 1966, as follows:

"Being duly sworn, Florence S. Brooks, state[s] as follows:

"1. That she is the Plaintiff in cause No. 5642 now pending in the Circuit Court of Franklin County, Missouri, wherein Hobart L. Cooksey is Defendant.

"2. Affiant states that on or about the 9th day of January, 1965, she and Defendant Cooksey came to an agreement, oral and not in writing, that Defendant Cooksey would sell all shares of stock owned by him in the Bank of Gray Summit (392) to Affiant at a price of $80.00 per share. Plaintiff agreed to pay the purchase price thereof immediately upon delivery of said shares to her by Mr. Leo Politte, the attorney for Defendant Cooksey.

"3. At the same time and in the presence of the same parties, Defendant directed his attorney, Mr. Politte, to vote all shares standing in Defendant's name, which were the shares subject to the agreement of sale mentioned above, as Affiant should direct him at the meeting of the shareholders of said Bank to be held very shortly after January 9, 1965.

"4. That Defendant's said attorney did so vote said shares as directed by Affiant.

"5. During the course of the discussions which culminated in the agreement to sell mentioned above, Affiant advised Defendant that she would offer the shares owned by her and those to be acquired from Defendant to certain persons then interested in the management of said Bank of Gray Summit and thereafter, in reliance upon the agreement of Defendant to sell the shares then owned by him to Affiant, Affiant entered into an agreement in writing with six of said interested persons collectively for the purchase of all shares of stock owned by her and those to be obtained from Defendant Cooksey pursuant to their agreement to sell. Said parties thereafter demanded that Affiant fulfill her agreement by delivering all said shares to them, but that she has been unable to do so because Defendant refused to deliver his shares to Affiant pursuant to their agreement as set out above.

"Further Affiant sayeth not."

The court on the same date considered the pleadings and the affidavits and took under advisement the motion for summary judgment. On September 23, 1966, the court rendered its order finding that (1) the affidavits established that no writing or memorandum of the alleged contract ever existed, (2) the acts relied on by plaintiff to avoid the Statute of Frauds, § 432.020, RSMo 1959, V.A.M.S., were not sufficient, (3) the acts relied on by plaintiff as constituting partial performance are not in furtherance of the alleged agreement and therefore do not constitute part performance, and (4) the doctrine of partial performance had no application to plaintiff's action at law. It thereupon rendered a summary judgment for defendant. After plaintiff's motion for new trial was overruled, plaintiff filed this appeal.

We are immediately confronted with defendant's motion that plaintiff's appeal be dismissed under Civil Rule 83.09, V.A.M.R., or in the alternative certain designated portions of the statement of facts in plaintiff's brief be stricken upon the grounds that it goes beyond Civil Rule 83.05(c), V.A.M.R., by including conclusions of law and argumentative statements. Our examination thereof does not persuade us that the complained violations are of such magnitude as to warrant the action requested. The motion is accordingly overruled.

■ It is clear that the trial court in its order rendering summary judgment for defendant applied § 432.020, RSMo 1959, V.A.M.S. Plaintiff in her pleadings, after trial motion for new trial, and brief does not contest that it is the applicable statute, but asserts that defendant is not entitled to the benefits of the statute as a defense to her suit. Defendant in his brief cites said section as authority for his defense. We are aware that this section has been held to include within its provisions contracts for the sale of corporate stock. Fine v. Hornsby, 2 Mo.App. 61; Kludt v. Connett, 350 Mo. 793, 168 S.W.2d 1068, 145 A.L.R. 1014; Houston v. Mahoney, Mo.App., 219 S.W. 128. We note, however, that the Uniform Commercial Code enacted by the legislature in 1963 provided at § 400.8–319 RSMo 1959, V.A.M.S., a statute of frauds in regard to contracts for the sale of securities. The entire code, including this provision, became effective July 1, 1965. In 1965 the legislature again looked at certain provisions of said code, enacted amendments thereto and specifically repealed § 432.020, effective July 1, 1965. See Laws of Missouri 1965, page 605, § 10–102 and page 606, § A. We have held that the statute of frauds is an affirmative defense which must be pleaded, and interposed by the party claiming its benefit. The statute does not render a contract void, but voidable; and therefore relates only to the remedy. Barr v. Snyder, Mo., 294 S.W.2d 4; Huttig v. Brennan, 328 Mo. 471, 41 S.W.2d 1054; Braudis v. Helfrich, Mo., 265 S.W.2d 371. Defendant in both his amended answer and second amended answer affirmatively pleads the application of the statute of frauds and his affidavit sets forth facts in support thereof.

Plaintiff's counter-affidavit states the agreement was oral. We must now ascertain which statute or statutes apply to the factual situation before us.

The repeal of any statute, including § 432.020, and the affect thereof are generally determined by the application of § 1.150 to § 1.180, RSMo 1959, V.A.M.S., inclusive. These general statutes determine how the repeal of any statutory provisions affects any act, right, or proceeding and the procedure which may be applicable. These statutes deal *generally* with these issues. The legislature, in its wisdom, enacted a specific provision to effectuate a smooth and orderly transition to the Uniform Commercial Code upon the repeal of § 432.020 as follows:

"Transactions validly entered into before the effective date specified in Section 10–101 and the rights, duties and interests flowing from them remain valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law amended or repealed by this Act as though such repeal or amendment had not occurred." Laws of Missouri 1965, page 605, § 10–102 (2). (Section 10–101 of said act provided that it became effective on July 1, 1965.)

■ It is fundamental that the courts should give effect to the specific over the general, and reconcile, harmonize, and construe statutes, if possible with a view to effectuate legislative purpose. State ex rel. R. Newton McDowell, Inc. v. Smith, 334 Mo. 653, 67 S.W.2d 50. In 1963 the legislature in enacting the Uniform Commercial Code regulating certain commercial transactions, and repealing many inconsistent and conflicting laws recognized that there were numerous changes in the law and the difficulty to be experienced in the commercial field in the transition from the old to the new. This is evidenced particularly by fixing and delaying the effective date thereof to July 1, 1965, and limiting its application to transactions entered into and events occurring *after*

that date. They also provided in 1963 a similar provision for transition as that quoted above in regard to the 1965 amendment. Laws of Missouri 1963, page 637, § 10–101, § 10–102; § 400.10–101 RSMo 1959, V.A.M.S. Plaintiff commenced her suit after the effective date of repeal. The general statutes would govern which section of statute of frauds should be applied, in the factual situation before us, except the legislature expressly provided as authorized, that the enactment of the Uniform Commercial Code and the repeal of various sections of the law were not effective as to transactions occurring prior to July 1, 1965. In the instant case a valid, but voidable, transaction between plaintiff and defendant occurred prior to July 1, 1965, i.e., January 9, 1965, and falls within the specific provision.

■ We see no conflict between the general statutory provisions cited herein and the transition provision, § 10–102(2), supra. The application of the latter provision clearly expresses legislative intent and, in fact, without the latter provision there might very well have been some very serious conflicts arising in regard thereto. Since the transaction before us for consideration was entered into prior to July 1, 1965, we therefore hold § 400.8–319, supra, is not applicable, but § 432.020 supra, was properly considered by the trial court.

■ We next consider plaintiff's contention that there was sufficient part performance by defendant and change of condition or position by plaintiff to eliminate the requirements of the statute of frauds, and entitled her to the protection of equitable estoppel. Equitable estoppel is available in an action at law and will be applied in courts of law as well as those in equity. Rodgers v. Seidlitz Paint & Varnish Co., Mo., 404 S.W.2d 191; Clauson v. Larman, Mo.App., 211 S.W. 912; Sidney Weber, Inc. v. Interstate Motor Freight System, Mo.App., 205 S.W.2d 291. It is an affirmative defense and it has been pleaded as

such. Section 509.090, RSMo 1959, V.A. M.S. Plaintiff in her reply to defendant's amended answer has raised this defense, and although the record does not reflect that she refiled her reply or any other pleading to defendant's second amended answer it is further set forth in her counter-affidavit on the motion for summary judgment. We consider the matter properly raised and before us.

Plaintiff cites the case of Emery v. Brown Shoe Company, Mo., 287 S.W.2d 761, l.c. 766, wherein it is said: " ' "Equitable estoppel, or estoppel in pais, is that condition in which justice forbids that one speak the truth in his own behalf." (cited case) It "stands simply on a rule of law which forecloses one from denying his own expressed or implied admission which has in good faith and in pursuance of its purpose been accepted and acted upon by another." (cited case).' " See also Rodgers v. Seidlitz Paint & Varnish Co., supra. This is sometimes referred to as gross injustice or virtual fraud as in the case cited by both parties hereto of Jones v. Linder, Mo., 247 S.W.2d 817, l.c. 819: "This gross injustice or 'virtual fraud' referred to is of necessity something more than the failure of one to live up to his oral agreement. It may be morally reprehensible and wrong for one to refuse to do what he said he would do. So, in one sense, there is always some injustice resulting from a violation of a moral obligation, especially when such results in loss to one of the parties of the benefits of his oral bargain. But even where an oral contract is admitted, a party to it may nevertheless assert the statute of frauds as a complete bar to enforcement, and may effectively repudiate any obligation under it, unless other factors to be presently mentioned are involved. Thus, we say this gross injustice or 'virtual fraud' of which we speak must be something more and of different kind than the injustice which usually arises from the loss of prospective ownership of a

particular property with the pursuant present and future benefits which may accrue therefrom."

We are cited no case by either plaintiff or defendant and our research discloses no Missouri case directly in point involving partial performance under facts similar to the case before us. We are aware and cited to a line of cases which assert the doctrine of "part performance" may entitle one to the enforcement of an oral contract within the prohibition of statute of frauds. In those cases involving an oral contract to convey realty, this doctrine requires " * * * that a plaintiff first show the performance of acts which point to or are evidentiary of the existence of the alleged contract between the parties pertaining to the real estate in question. Such proof is a condition precedent to the introduction of parol testimony to prove the specific terms of the oral contract. It is not sufficient that the verbal contract pleaded give color and meaning to acts allegedly performed pursuant to it; the acts performed must first evidence the existence of the pleaded contract. (cited cases)" Jones v. Linder, supra.

With these principles in mind which we feel are equally applicable in the instant case, we review further the evidence from the standpoint most favorable to plaintiff.

Plaintiff owned 592 shares and defendant owned 392 shares of the Bank of Gray Summit, Gray Summit, Missouri. On January 9, 1965, plaintiff contracted orally to purchase from defendant his shares at $80 per share. Plaintiff was to pay the purchase price immediately upon delivery by defendant's attorney to her of the certificates for said shares. At the same time defendant directed his attorney to vote said shares as plaintiff should direct him at the meeting of the shareholders of said bank to be held shortly after January 9, 1965. Thereafter defendant's attorney did vote said shares as directed by plaintiff.

During the negotiations plaintiff advised defendant that she would offer the shares owned by her and those to be acquired from defendant to other persons interested in the management of said bank. Plaintiff thereafter did offer all of her stock, including those to be acquired from defendant to six other persons, and they executed a written contract therefor. Defendant thereafter refused to deliver his shares to plaintiff and she could not subsequently on demand deliver all of said shares to the third persons as per her contract.

The agreement between plaintiff and defendant was not in writing, nor was there any note or memorandum in writing signed. No money or other consideration was paid by or for plaintiff to defendant or anyone for him in part or in full payment for his shares. There was never any delivery nor acceptance of any of the shares.

█ Plaintiff contends that the voting of defendant's shares at the shareholders' meeting by defendant's attorney as directed by plaintiff is part or partial performance of their agreement and demonstrated that the parties had arrived at a binding contract. Plaintiff urges that defendant thus relinquished a principal right of a shareholder, i. e., the right to vote his shares, and that the act is clearly referable to and evidence of a contract between them. We cannot agree with this contention. The "part performance" of voting the shares as plaintiff directed must point to and be evidentiary of the existence of *the specific* contract or agreement to sell between plaintiff and defendant. This it fails to do. Such action can be taken by a shareholder for any number of different reasons, and it is a common practice today for a shareholder to give another the right to vote his shares or proxy without any expectation of the sale of his shares. Such is not evidence of a sale to plaintiff or a desire of defendant to sell his shares nor does it give color

or meaning to the subsequent acts of plaintiff.

It is further urged by plaintiff that defendant knew she was going to offer her shares and those shares she was to acquire from defendant to third persons. Her offer was accepted and she bound herself to sell and transfer the entire block of stock to these third parties. She contends she thereby altered her position, assumed a legal obligation, to her detriment in that she was unable to perform her agreement and transfer said stock upon defendant's refusal to deliver his shares; and he breached their contract to her gross injustice. It appears that defendant received no benefit from plaintiff's sale to third parties of all of her shares, including those shares she expected to acquire from him; and important consideration in determining whether equity should intervene. Collins v. Harrell, 219 Mo. 279, 118 S.W. 432.

We also note that from the beginning plaintiff was bound to know that their agreement was subject to the statute of frauds and that she thereafter contracted in writing to sell the entire block of shares to others, knowing that the defendant was not *legally* bound in the event he invoked the statute of frauds.

█ We have considered all of these matters and find that the acts of defendant in causing his shares to be voted at the direction of plaintiff and the sale by plaintiff of her shares and those to be acquired from defendant were not those acts of "part performance" which provide an exception to the statute of frauds. Otherwise expressed, the acts are not such that a gross injustice or deepseated wrong results to plaintiff by enforcing the statute of frauds and, therefore, equitable estoppel does not arise. Jones v. Linder, supra; Rodgers v. Seidlitz Paint & Varnish Co., supra; Emery v. Brown Shoe Company, supra; Ellison v. Wood Garment Company, Mo.App., 286 S.W.2d 27, l.c. 30.

Defendant has shown by unassailable evidence that there is no remaining issue of fact in the case. The trial court properly rendered for defendant its order of summary judgment as a matter of law.

It is affirmed.