Raymond WARREN,
Plaintiff–Appellant,

v.

Harold WARREN, Sr., Helen Warren,
and Harold Warren, Jr.,
Respondents.

No. WD 41391.

Missouri Court of Appeals,
Western District.

Dec. 19, 1989.

As Modified Jan. 26, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 1990.

Application to Transfer Denied March 13, 1990.

248

Thomas Schneider, Columbia, for plaintiff-appellant.

Craig A. Van Matre, Columbia, for respondents.

Before NUGENT, C.J., and CLARK and FENNER, JJ.

NUGENT, Chief Judge.

Plaintiff Raymond Warren appeals from the trial court's judgments against him, denying him relief and granting relief to defendants Harold Warren, Sr., Helen Warren and Harold Warren, Jr., on their counterclaims. We affirm the judgment.

The plaintiff asserts that the court erred in finding an oral partnership agreement between plaintiff and defendant entitling each to receive, in addition to his share of profits, remuneration for services rendered the partnership; in estopping the plaintiff from complaining about the agreement's method of compensation; in applying the doctrine of unclean hands to him; that the court erroneously declared that neither party had a property interest in the partnership's name; in finding that defendant Helen Warren had a $30,000 claim against one of the partnerships; in overruling his motion for a new trial; and employing an incorrect date in its adjudication of the assets and liabilities of one of the partnerships.

Under the standard of review in a court-tried case adopted in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976) (en banc), an appellate court must affirm the trial court's judgment unless no substantial evidence supports it or the weight of the evidence compels another result, or unless the judgment erroneously declares or applies the law.

This case arises from the long histories of two partnerships established and operated by two brothers, Harold Warren, Sr., and Ray Warren. In September, 1969, defendant Harold Sr. and his wife, Helen, bought the Stuart Parker Funeral Home

business in Columbia, where Mr. Warren worked as a mortician, embalmer, and licensed funeral director. To finance that purchase, they borrowed $8,000 from the Boone County National Bank. The Warrens, however, acquired only the funeral home's business assets; Zana Mae Smith, executrix of Gertrude Parker's estate, to which the business had belonged, retained ownership of the trade name, Stuart Parker Funeral Home. The couple also leased the building housing the funeral home from Ms. Smith.

Thereafter, plaintiff Ray Warren accepted his brother's invitation to join the funeral home business as a partner. He then sent Harold Sr. $1,000 as an investment in the enterprise and moved with his family from Kansas City to Columbia. Thus the brothers established the Stuart P. Parker Funeral Home partnership.

In 1970, to augment their incomes, the brothers created a second partnership, The Warren Yard and Tree Service. The funeral home provided the funds to establish this second partnership.

The brothers based their partnerships solely on oral agreements and never reduced them to writing. Initially, they assented to equal ownership rights in both partnerships and adopted a system under which each partner drew from the partnerships' funds a reasonable compensation for his services.

During the early years, the brothers shared the work of the two businesses. Harold Sr., a licensed embalmer and funeral director, performed lab work and all other specialized mortuary services. Ray served as a funeral director, the only mortuary position for which he held a license, and otherwise assisted in conducting funerals.

After a few years, Harold Sr. spent an increasing portion of his time in the funeral home. By 1978, Ray Warren devoted most of his time to the tree service; he spent only a few hours each week assisting with funerals. Harold Sr., on the other hand, spent nearly all his time working at the funeral home. Helen Warren, his wife, also worked for the firm.

In 1983, defendant Harold Warren, Jr., graduated from mortuary school and began to work full time for the funeral home. The funeral home had paid for his mortuary education in return for his promise to return to work for the business after graduation. In September, 1983, Ray Warren filed suit, seeking, among other claims, an accounting for the funeral home.[1] The defendants filed counterclaims.[2] Nevertheless, Ray Warren continued to perform limited services for the business until 1984 when he finally voluntarily disassociated himself from the funeral home, which the defendants continued to operate.

Throughout that time, Ray Warren had access to the safe containing the funeral home's financial records. In 1987, however, defendant Harold Sr. changed the combination, thus effectively preventing his brother from further participating in that partnership.

The parties tried the case to the court. In May, 1984, the trial court by interlocutory judgment ordered an accounting of the financial records up to March 1 of that year from each partnership. Each partner submitted an accounting for the business that he directed.

The court found Harold Sr.'s accounting to be substantially accurate but determined Ray Warren's to be substantially inaccurate. It further found that he had intentionally tried to withhold facts material to the case by not turning over to the defendants cash receipt books for the calendar years 1973 through 1984. The court also found in favor of the defendants on all the

---

1. He further petitioned the court to adjudge him co-owner of the funeral home's property and sought damages from Harold Sr. for conversion and for one half of the sums paid by the funeral home to the three defendants, including half the amount spent on Harold Jr.'s mortician's training.

2. The defendants petitioned the court for an accounting and sought actual damages, prejudgment interest and punitive damages for the plaintiff's "appropriation or diversion" of Harold Sr.'s funds.

claims and counterclaims but allowed no damages on the counterclaims.

■ On appeal, Ray Warren in his first point asserts that the trial court erred in entering judgment against him based upon its finding that an oral agreement bound each partner to draw compensation commensurate with his services. The plaintiff argues that the evidence does not support such a finding. He further argues that the trial court's conclusion of law finds no evidentiary support or contravenes the weight of the evidence.

The plaintiff's argument must fail because the record supports the trial court's findings. Moreover, the evidence, as well as both statutory and case law, support that court's conclusion of law. Testimony by the Warren brothers evidences a compensation system for both partnerships abstruse as to a method of payment but clear as to intent and business customs.

The record attests to an agreement between Ray and Harold Sr. under which Ray would run the tree service, Harold the funeral home, and each would draw compensation commensurate with his input of services. In fact, in his testimony Ray Warren acknowledged issuing salary checks and referred several times to the partners allowing themselves moderate compensations. For nearly fifteen years, he had access to the funeral home books and its checkbook, from which he issued checks. He knew of and did not protest the perquisites afforded his brother by the partnership, such as use of an apartment above the funeral home and of a car.

Section 358.180 [3] enunciates the rules determining the rights and duties of a partner. Those portions pertinent to this case read: "The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules: ... (6) No partner is entitled to remuneration for acting in the partnership business...." The verbal agreement between the plaintiff and his brother, which the trial court described as "verbal" but which we, in the absence of any evidence of a written agreement, call "oral," negates, however, the statute's proscription of compensation to partners. This statutory rule and exception mirror longstanding Missouri common law. *See Cramer v. Bachmann,* 68 Mo. 310, 312 (1878).

■ Furthermore, Missouri law recognizes the validity of oral and implied agreements between partners. *See Cramer, supra,* at 311–12. The Supreme Court has held that an agreement "may be either oral or written, verbally expressed or implied from the acts and conduct of the parties themselves. The primary criterion to be applied in determining the issue of partnership vel non is that of the intention of the parties." *Schneider v. Schneider,* 347 Mo. 102, 146 S.W.2d 584, 588 (1940). Missouri courts have not departed from this precedent. *See Bernard McMenamy Contractor, Inc. v. Kitchen,* 692 S.W.2d 817 (Mo. App.1985) (partnership agreement may be expressed or implied from partners' acts and conduct).

Indeed, for more than a century, Missouri has recognized that, in the presence of an agreement linking compensation to a partner's efforts, partners providing services vital to the enterprise, or those devoting much of their time to the partnership's commonweal, deserve compensation often far in excess of that owed partners providing less important services or those giving only little time to the business. For example, in *Cramer,* the Supreme Court held that a wine maker's expertise and superintendence, which had ensured the success of a winery, entitled him to proportionally greater compensation than that due his partner. *Cramer, supra,* at 312–13.

In *Schoeller v. Schoeller,* 497 S.W.2d 860 (Mo.App.1973), we held partners entitled to reasonable salaries during the winding up period where they had remained after dissolution and increased the profits received by all partners. That remuneration would come from the profits owed the partners, including that owed the withdrawing partner. *Id.* at 870–71.

3. Sectional references are to Missouri Revised Statutes, 1986.

Both *Cramer* and *Schoeller* apply here. Like *Cramer's* wine maker, Harold Warren, Sr., provided the expert services vital to the partnership. His skills in the mortuary business far exceeded his brother's. The record shows that the brothers agreed that Harold Sr. would run the funeral home and Ray, the tree service. Thus, implicitly if not expressly they acknowledged each other's expertise, and, accordingly, each concentrated his efforts in the area of his own ability.

Moreover, as in *Schoeller*, the plaintiff here derived substantial financial benefit from an enterprise (the funeral home) to which he contributed but minimal efforts. Concomitantly, Harold, Sr. succeeded in continuing to operate the business despite the effective withdrawal of his brother. Thus, he became entitled to suitable compensation for his efforts.

The plaintiff next claims (Point II) that the trial court erred in invoking the doctrines of estoppel and laches to preclude his complaint as to the funeral home's method of compensation. He argues first that, because both estoppel and laches are equitable defenses, neither applies to Count II of his petition, which sounds in conversion or in money had and received, both actions at law.[4] He next argues that even if the defenses could apply, the trial court's conclusion upon which it based its judgment finds no support in or conflicts with the evidence.

■ Plaintiff Ray Warren correctly states that the doctrine of laches cannot apply as a defense to an action at law. *UAW–CIO Local # 31 v. Royal Insurance Co.*, 594 S.W.2d 276, 281 (Mo.1980) (en banc); *G.M. Morris Boat Co., Inc. v. Bishop*, 631 S.W.2d 84, 88 (Mo.App.1982). Nevertheless, his arguments fail.

■ The Supreme Court has held, however, that equitable estoppel applies to an action at law. *UAW–CIO Local # 31, supra*, at 281. *See also Brooks v. Cooksey*, 427 S.W.2d 498 (Mo.1968). The court ad-monished against the mistake the plaintiff has made in the instant case: "The terms 'estoppel' and 'laches' are frequently, though improperly, interchanged." *UAW–CIO Local # 31, supra*, at 281. In fact, in support of his argument, the plaintiff cited a case that specifically followed the Supreme Court's holding disallowing laches but allowing estoppel as a defense to an action at law. *G.M. Morris Boat Co., Inc., supra*, at 88.

■ Although we hold that equitable estoppel may bar an action at law, we need not further address that issue because we conclude that Ray Warren may not bring an action at law, but only an equitable action.

Ordinarily, under Missouri law, an action at law between partners will not lie until an accounting results in the striking of a balance. *Koontz v. Whitaker*, 111 S.W.2d 197, 199 (Mo.App.1937). Actions at law may be maintained without the prerequisite of an accounting only "where the partnership is limited to a single venture, or where the items sued on are few and simple of solution." *Id.*

The instant case does not fall within those exceptions; therefore, Mr. Warren's causes of action would necessarily have had to follow an accounting. They did not. He alleged conversion in his second amended petition, and argues that he indeed brought an action at law. The trial court ordered an accounting through an interlocutory judgment. Therefore, Mr. Warren initially alleged invalid claims. At the time he brought this action, he could only have sought equitable relief. The trial judge barred such relief under the doctrines of estoppel and "unclean hands."

■ Thus, Ray Warren may not bring an action for money had and received, an action at law. He may, however, bring an action for conversion, for in Missouri, "an equitable action of conversion will lie. ..."

---

**4.** Ray Warren alleges in Count II of his second amended petition that his brother converted $113,374, and seeks, along with costs and expenses, a judgment of $56,687, prejudgment in-terest, and punitive damages of $75,000. Count II does not allege assumpsit in the form of money had and received, as does his brief on appeal.

*Burroughs v. Lasswell,* 86 S.W.2d 962, 966 (Mo.App.1935).

Missouri law defines conversion as "the unauthorized assumption of a right of ownership over the personal property of another." *Lick Creek Sewer Systems v. Bank of Bourbon,* 747 S.W.2d 317, 325 (Mo.App. 1988). "An assumption of the right to ownership is 'unauthorized' if the property is taken without the express or implied consent of the owner," and "[e]ven when the taking is authorized, a conversion action will lie if the owner makes a demand for the return of the property followed by a refusal to return the property." *Id.* In this state, "[a] partners's interest in the partnership is his share of the profits and surplus, and the same is personal property." § 358.260.

■ Proof of conversion may be shown by a tortious taking, by any use or appropriation to the use of the person in possession indicating a claim of right opposed to the rights of the owner, or by a refusal to give up possession to the owner on demand. *West County Internal Medicine v. Domian Standard Service,* 725 S.W.2d 116, 118 (Mo.App.1987).

■ Equitable defenses apply to actions in conversion unless the defendant has tortiously taken the property. *See Kelley v. Cassels,* 226 Ala. 410, 147 So. 597 (1933) 147 So. at 599. The money that Harold Sr. received through his efforts in the funeral home, as we have noted above, came to him in accordance with the brothers' longstanding agreement on compensation. Thus, he did not tortiously take the money, and the equitable defenses of estoppel and unclean hands, absent further obstacles, properly applied.

■ The Supreme Court has defined the defense of equitable estoppel, or estoppel in pais, as "that condition in which justice forbids that one speak the truth in his own behalf." *Brooks v. Cooksey, supra,* 427 S.W.2d at 504. The defense rests on the rule of law that precludes one from denying his own expressed or implied admission or statement that another in good faith pursuant to its purpose has accepted

and acted upon. *Id. Emery v. Brown Shoe Company,* 287 S.W.2d 761 (Mo.1956); *Miskimen v. Kansas City Star Co.,* 684 S.W.2d 394 (Mo.App.1984). Equitable estoppel requires three elements: First, the party estopped must have acted or spoken inconsistently with a claim it later asserts and sues upon; second, the other party must have acted in reliance upon the initial act or statement; finally, the other party must show that it will receive injury if the asserting party can contradict or repudiate its initial act, admission or statement. *Miskimen, supra,* at 400.

■ The situation before us meets this three-part test. First, plaintiff Ray Warren's conduct during his fifteen-year participation in the funeral home attests that he both approved of the compensation system and understood his rights under it. He had access to the funeral home's financial records for most of those fifteen years, and thus had ample opportunity to examine those records and to voice any complaint he had. In fact, although he disassociated himself from the funeral home in 1984, he continued to have sufficient access to the checkbooks to write a check in January, 1985.

To constitute the first prong of equitable estoppel the party estopped "must have acted or pursued some course of conduct with knowledge of the facts and his rights." *G.M. Boat Co., Inc., supra,* 631 S.W.2d at 89. Ray Warren's conduct has evinced such knowledge. He cannot reasonably contend that his failure to complain about the compensation system for so many years demonstrates mere "[s]ilence without knowledge," which does "not work an estoppel." *Id.*

Second, "[o]ne claiming an estoppel must have acted in reliance and to his detriment upon the admission or conduct of the one estopped," *Miskimen, supra,* at 401. The record shows that the brothers discussed the method of compensation several times and agreed to this system. During his fifteen-year association with both partnerships, Harold Sr. withdrew little more than $400 from the tree service, whereas his brother withdrew many times that amount

from the funeral home. Relying on their agreement, Harold Sr. withdrew what he believed himself entitled to, and acquiesced in his brother's withdrawal of money he believed Ray had earned. Harold Sr. could have taken more but he did not. Thus, he relied to his detriment on his brother's conduct by assuming that Ray had accepted their plan of compensation.

Finally, after a long period of receiving compensation based upon his skill and expertise in the mortuary business, defendant Harold Warren, Sr., would suffer great injury if a court now required him to divide his earnings with his brother. As noted, he has derived minimal financial gain from the tree service; as a result of their agreement to compensation based on service, however, he has prospered through running the funeral home. Business ventures necessarily involve the possibility of gains and losses. The plaintiff should not now, in contravention to a long-standing agreement, suddenly become entitled to receive a windfall from the more profitable partnership merely because of its profitability.

Plaintiff Ray Warren also fails in his argument set out in Point III that the trial court erred in denying him all relief based upon the doctrine of "unclean hands." The court concluded that Mr. Warren had sullied his hands in the operation of the tree service through actions it deemed inequitable.

■ Missouri employs the rule "that equity will not aid a party who comes into court with unclean hands." *Hardesty v. Mr. Cribbins's Old House, Inc.*, 679 S.W.2d 343, 348 (Mo.App.1984). *See also Moore v. Carter*, 356 Mo. 351, 201 S.W.2d 923, 929 (Mo.1947); *Mahaffy v. City of Woodson Terrace*, 609 S.W.2d 233, 238 (Mo.App. 1980). The triggering of the "unclean hands" doctrine does not require the party against whom it applies to have engaged in fraudulent conduct. *Moore, supra*, 201 S.W.2d at 929. Instead, "one who has engaged in inequitable activity regarding the very matter for which he seeks relief will find his action barred by his own misconduct." *Mahaffy, supra*, at 238.

■ Plaintiff Ray Warren first argues that "unclean hands" cannot apply to the actions at law alleged in Count II of his second amended petition, conversion or money had and received. True, in Missouri, "[t]he 'clean hands' doctrine does not operate to bar a claim for damages at law," *Kay v. Vatterott*, 657 S.W.2d 80, 83 (Mo. App.1983), and, therefore, it may not serve as a defense to an action for money had and received. But, as we have held, Ray Warren may only bring an action for conversion, and thus, the equitable defense of unclean hands may apply.

■ He argues, however, that "unclean hands" may not apply if the inequitable conduct is mutual. "[W]here the fault is mutual the law will leave the case as it finds it." *Rose v. Houser*, 206 S.W.2d 571, 576–77 (Mo.App.1947). Here, however, we find no evidence that defendant Harold Warren, Sr., sullied his hands in the operation of his partnership business.

■ Finally, for the defense to apply, we must determine whether Ray Warren soiled his hands "in acquiring the right that he now asserts." *Kay v. Vatterott, supra*, at 83. That question, and not merely "that the plaintiff's hands are dirty," decides the applicability of the "unclean hands" defense. *Id.*

The trial court found that the brothers sought the dissolution and termination of both partnerships. Ample evidence demonstrates that Ray Warren dirtied his hands through his cavalier use of the tree service's funds and inequitable treatment of its accounts. Moreover, the court found that his representations to the court "were intentionally and deliberately misleading" and that his "failure to disclose to Defendants the cash receipt books for the calendar years 1973 through 1984 also was done with a view towards intentionally withholding from disclosure facts material to this case."

Thus, during his operation of one of two interrelated partnerships, and during the legal action employed to determine his rights to proceeds from those partnerships, Ray Warren indeed begrimed his hands.

Therefore, the defense of unclean hands bars him from equitable relief.

▓ Plaintiff presents four additional points, none of which contains any citations of legal authority. Rule 84.04(d)[5] provides: "The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder."

In *Thummel v. King*, 570 S.W.2d 679, 687 (Mo.1978) (en banc), the Supreme Court, held that counsel for an appellant has a duty to follow Rule 84.04(d) and that courts should not be asked to decide cases on the basis of inadequate briefing. *Id.* at 686.

Defendants' counsel has shown by the cases cited in his brief that legal authority exists for three out of four of plaintiff's points. Although we need not, we choose instead to address those unsupported points.

▓ In Point IV, plaintiff argues first that the trial court erred in finding that the parties had no property interest in the funeral home's name, "Stuart P. Parker," since that name still belongs to Zana Mae Smith. He maintains that because neither party pleaded the issue of ownership of the name, the court should not have addressed it. He further argues that even if the trial court could have properly addressed the issue, it erred in not ordering sale of the name by quit-claim deed to the parties. The record includes sufficient evidence upon which the court could base its finding.

Missouri recognizes the name of a business as an asset subject to sale, *Osborn Paper Co. v. Carrold Osborn Paper Co.*, 361 Mo. 357, 234 S.W.2d 614, 617 (1950), but nothing in this evidence reveals any intent of Ms. Smith to sell the mortuary's name at any time. Harold Warren, Sr., testified that Ms. Smith never sold him the funeral home's name. Thus, the trial court did not err in its finding as to the ownership or sale of the mortuary's name.

▓ In his Point V, plaintiff Warren contends that the trial court erred in its "gratuitous finding" that defendant Helen Warren had a $30,000 claim against the funeral home for services rendered. The court found that Mrs. Warren's services entitled her to a reasonable compensation and that this compensation totalled $31,541.50. The court treated Mrs. Warren as it treated other creditors by including her claim in the list of all claims against the funeral home. A creditor's claim against a partnership exists against the partners jointly and severally. *Frazier v. Radford*, 225 Mo.App. 1104, 23 S.W.2d 639, 641 (1926). Moreover, Harold Sr.'s representations to his wife that she would receive compensation for her work, and his subsequent admissions in court confirming this, fell within the scope of his authority as a partner and thus obligate the funeral home to pay Mrs. Warren for her services. *See* § 359.110.

▓ Plaintiff's Point VI asserts that the trial court erred in overruling his motion for a new trial, in refusing to open the judgment to offer new testimony, and in refusing to amend and correct the judgment. He contends that the introduction of new testimony by his certified public accountant would have proven highly material, given the trial court's emphasis on irregularities in the tree service's cash records.

Appellate courts will not interfere with a trial court's decision to reject a party's motion to reopen a case for additional testimony "unless an abuse of discretion appears." *Marsden v. Nipp*, 325 Mo. 822, 30 S.W.2d 77, 80–81 (1930). Ray Warren has not shown us the trial court's purported abuse of discretion. He had ample opportunity during trial to introduce and to explain the evidence he later sought to adduce. He argues that after it became apparent that the trial court placed special emphasis "on the 'cash' issue", he could have introduced evidence "to show that the same charges could have been made against Respondent." That he chose not to introduce this evidence during trial reflects his own judgment as to the value of this

---

**5.** Missouri Supreme Court Rules of Civil Proce-   dure.

additional information at the time of the trial. Courts cannot reopen cases merely because a party has had a change of heart regarding the importance of evidence it chose not to introduce when it first had the opportunity to do so.

 Furthermore, Ray Warren has not demonstrated the requisite injury from the trial court's denial of his motion to reopen the judgment. *Fowler v. S–H–S Motor Sales Corp.*, 560 S.W.2d 350 (Mo.App.1977). He has simply not shown that the evidence he now seeks to unveil would substantially change the outcome of the suit.

 Finally, in Point VII plaintiff argues that the trial court erred in choosing as the date for adjudicating the assets and liabilities of the funeral home, August 17, 1987, five days after Harold Sr. changed the combination to the funeral home safe. He contends that the court should have chosen December 31, 1983, the date he claims to have withdrawn from the partnership, as the date for adjudicating the assets and liabilities.

 Absent an explicit declaration of withdrawal and demand for dissolution, the separation by a partner from the affairs of a partnership effects a de facto dissolution of the partnership. Section 358.290 provides: "The 'dissolution' of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on ... of the business." *See Willman v. Beheler*, 499 S.W.2d 770 (Mo.1973).

Here, although Ray Warren ceased working for the funeral home in 1983, he drew on its funds as late as January, 1985. That act did not constitute an actual change in the relation of the partners because of its ambiguity. It did not clearly evidence his intent to disassociate himself from the funeral home, and we cannot infer an intended action from his subsequent inaction.

His brother's change of the safe combination does, however, demonstrate an intent to change the relationship of the partners. Accordingly, the trial court did not err in adjudicating the liabilities and assets of the funeral home as of that date.

For the foregoing reasons, we affirm the judgment of the trial court.

All concur.