Kraig **MIKULICH**, Sara Mikulich, **DeLyne K. Knox, and Annette Willett, Respondents,**

v.

Phyllis **WRIGHT, Appellant.**

**Nos. WD 60447, WD 60448, WD 60449.**

Missouri Court of Appeals, Western District.

Sept. 24, 2002.

Keith Wayne Hicklin, Platte City, for appellant.

J.C. Hambrick Jr. and David Paul Chamberlain, Kansas City, for respondent.

PAUL M. SPINDEN, Judge.

This lawsuit involves a pyramid scheme, Women's Empowerment Network, in which the circuit court ordered Phyllis Wright to pay $10,000 to Kraig and Sara Mikulich, $10,000 to DeLyne K. Knox, and $20,000 to Annette Willett. These amounts were double what these individuals had contributed to the pyramid scheme. The circuit court determined that Wright had induced or caused the Mikuliches, Knox, and Willett to participate in a pyramid sales scheme. Section 407.410 [1] provides that persons who induce others to participate in pyramid sales schemes are liable in a civil action for twice the "consideration" that the inducer persuaded the participants to pay.

Wright appeals, contending that the circuit court's judgment is not supported by substantial evidence. She argues that the Mikuliches, Knox, and Willett did not present any evidence to prove that her "acts were in connection with the sale or distribution of goods, services or other property." She also asserts that they did not prove that she "induced or caused [them] to participate in a pyramid sales scheme[.]"

To establish a right to double damages, the Mikuliches, Knox, and Willett had to prove, according to § 407.410, that Wright "directly or through the use of agents or intermediaries, induce[d] or cause[d] [them] to participate in a pyramid sales scheme." The General Assembly defined "pyramid sales scheme" in § 407.400(5) as:

> [A]ny plan or operation for the sale or distribution of goods, services or other

---

**1.** All citations to statutes refer to 2000 Revised Statutes.

property wherein a person for a consideration acquires the opportunity to receive a pecuniary benefit, which is not primarily contingent on the volume or quantity of goods, services, or other property sold or distributed or to be sold or distributed to persons for purposes of resale to consumers, and is based upon the inducement of additional persons, by himself or herself or others, regardless of number, to participate in the same plan or operation[.]

Wright argues that the Mikuliches, Knox, and Willett did not present evidence that she "sold" anything to them.

◼ The Mikuliches, Knox, and Willett's burden did not include proving that Wright sold something to them to be liable for inducing or causing them to participate in a pyramid scheme as defined in § 407.400(5). Although sale or distribution of goods, services, or other property is a key element in the definition of a pyramid scheme, it mattered not that the evidence did not show that Wright sold or distributed goods, services, or other property. That others were the sellers is of no consequence. To be liable for double damages, Wright needed only to have induced the Mikuliches, Knox, and Willett to participate in the pyramid scheme. Hence, the first part of Wright's argument is without any merit, and we turn to the second part—that the Mikuliches, Knox, and Willett did not establish that Wright induced them to participate in a pyramid scheme.

◼ Wright does not contest the circuit court's finding that the scheme involved in this case was "an illegal pyramid scheme." The evidence established that unidentified persons told the Mikuliches, Knox, and Willett, that, to participate in the scheme, they had to pay $5000 each to Wright.

Willett attended a promotional meeting for the pyramid scheme. Wright was at the meeting and the two discussed the scheme. Willett testified:

I had talked to [Wright] about where she was at on the [pyramid] and about in general at the meeting we talked about what you had to do to get involved in the program as far as paying the person who was at the top of the tree the $5000. We discussed the legal issues as far as was told that it was completely legal and just information about [how] the program worked.

Knox testified that she discussed the scheme with Wright after a person—she did not identify the caller—telephoned her and told her to pay $5000 to Wright. Knox said that she called Wright, "and she said that I could bring it to her work place, that she was there; it was like a Thursday afternoon and I could bring it to her work place, which Mount Moriah Cemetery is where I delivered the money." Knox added that, when she met with Wright to give her the money, they "had a brief conversation about [Wright's] involvement in it, [Knox's] involvement, and that [Knox] was nervous[.]"

Kraig and Sara Mikulich attended a promotional meeting which Wright also attended. Kraig Mikulich testified that Wright "made several comments during that presentation about how it really works, the things it was doing for her daughter." Sara Mikulich testified that she telephoned Wright "to kind of settle my spirits and see how that was." She said that Wright told her "that it was a great thing, that she had made a lot of money, and that she had found that it was legal. But she had talked to somebody herself and her daughter had, to put my mind at ease."

◼ Because of its providing for double damages, § 407.410 is a penal statute. *See* *State ex rel. Ashcroft v. Wahl*, 600 S.W.2d 175, 180 (Mo.App.1980). Courts must con-

strue penal statutes "strictly and literally"—that is, courts can give penal statutes "no broader application than is warranted by its plain and unambiguous terms." *City of Charleston ex rel. Brady v. McCutcheon*, 360 Mo. 157, 227 S.W.2d 736, 738 (1950).

We glean the General Assembly's intent from the plain and ordinary meanings of the words that it uses in its statutes. *Ste. Genevieve School District R–II v. Board of Aldermen of the City of Ste. Genevieve*, 66 S.W.3d 6, 11 (Mo. banc 2002). The dictionary, of course, is the source for plain and ordinary meanings of words.

The words on which to focus in this case are "induce" and "cause." Did Wright induce or cause these individuals to participate in the pyramid scheme? The dictionary definition of "induce" is "to move and lead (as by persuasion or influence) ...: prevail upon: influence, persuade ...: to inspire, call forth, or bring about by influence or stimulation[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1154 (1971). The dictionary definition of "cause" is "to serve as cause or occasion of: bring into existence: make ...: to effect by command, authority, or force[.]" *Id.* at 356.

Applying a strict and literal construction of § 407.410, we conclude that Wright did induce these individuals to join the scheme. As Kraig Mikulich said, Wright spoke up during a meeting that the Mikuliches attended in an attempt to persuade attendees to join. Her telling Sara Mikulich and Willett that she and her daughter had reaped benefits from the scheme was inducement for them to join. The weakest case is the one made by Knox. Wright, however, arranged for Knox's payment and thereby facilitated her participation. Wright discussed during her meeting with Knox her experience with the scheme. The circuit court could reasonably have concluded, even in the strictest sense of the word, that Wright was actively endeavoring to induce Knox to join the scheme. We, therefore, affirm the circuit court's judgments.

Wright makes much of Willett's active participation in the pyramid scheme. The Mikuliches, for instance, testified that Willett had invited them to join the scheme. Wright seems to be alluding to the doctrine of "unclean hands." The doctrine, however, does not bar a claim for damages at law and has no application in this proceeding. *Warren v. Warren*, 784 S.W.2d 247, 254 (Mo.App.1989); *Kay v. Vatterott*, 657 S.W.2d 80, 83 (Mo.App.1983). Hence, her point is without merit.

ROBERT G. ULRICH, Presiding Judge, and EDWIN H. SMITH, Judge, concur.